UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                           :

AUSTIN FENNER and             :
IKIMULISA LIVINGSTON,      :      Civil Action No.: 09 CV 9832(BSJ)
                           :

            Plaintiffs,    :

     vs.                    :

NEWS CORPORATION, NYP HOLDINGS, :
INC., d/b/a THE NEW YORK POST,    :
MICHELLE GOTTHELF and DANIEL   :
GREENFIELD, in their official and individual :
capacities,                       :

           Defendants.  :
-------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Hector Torres (htorres@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

Attorneys for Defendants News Corporation,
NYP Holdings, Inc., d/b/a the New York Post,
Michelle Gotthelf and Daniel Greenfield

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................1

FACTS......................................................................................................................3

ARGUMENT............................................................................................................4

I.  PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED FOR
    FAILURE TO STATE A CLAIM.......................................................................5

    A.  Plaintiffs Did Not Engage in Protected Activity, Nor Could They Have
        Believed in Good Faith That They Had Done So......................................6

        1.  Complaints about the Stimulus Cartoon Are Not Protected Because
            They Were Not Directed at an Unlawful Employment Practice ............6

        2.  Plaintiffs Do Not Allege That They Challenged an Unlawful
            Employment Practice Because the Stimulus Cartoon Is Protected
            First Amendment Speech...........................................................8

        3.  Plaintiffs Cannot Allege That They Had a Good Faith Belief That
            Their Complaints Challenged an Unlawful Employment Practice
            Because the Cartoon Was Not an Employment Practice, Was
            Protected Speech, and Because a Single Incident of Purported
            Harassment Is Insufficient as a Matter of Law To Constitute a
            Hostile Work Environment.......................................................10

    B.  Plaintiffs Fail to Place Defendants on Notice of Their Complaints About
        Unlawful Discrimination .......................................................................12

    C.  Plaintiff Livingston Fails to Plead a Causal Connection Between Her
        Alleged Protected Activity and Her Alleged Retaliation .....................15

II. NEWS CORP. IS NOT PLAINTIFF'S EMPLOYER AND OTHERWISE IS
    NOT A PROPER DEFENDANT .......................................................................16

CONCLUSION .......................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

<u>Ashcroft v. Iqbal</u>,
 __ U.S. __, 129 S. Ct. 1937 (2009) ....................................................................... 4

<u>Aspilaire v. Wyeth Pharmaceuticals, Inc.</u>,
 612 F.Supp. 2d 289 (S.D.N.Y. 2009) ............................................................... 12

<u>Bazile v. City of New York</u>,
 215 F.Supp. ............................................................................................................ 14

<u>Bazile v. City of New York</u>
 215 F.Supp. 2d 354 (S.D.N.Y. 2002), <u>aff'd</u> 64 Fed. Appx. 805 (2d Cir. 2003) ..................... 13

<u>Billy v. Consolidated Mach. Tool Corp.</u>,
 51 N.Y.2d 152 (1980) ......................................................................................... 16

<u>Brutus v. Silverseal Corp.</u>,
 2009 WL 4277077 (S.D.N.Y. Nov. 24, 2009) ................................................... 15

<u>Chenette v. Kenneth Cole Productions, Inc.</u>,
 2009 WL 2837626 (2d Cir. Sept. 4, 2009) ........................................................ 11

<u>Clark County School Dist. v. Breeden</u>,
 532 U.S. 268 (2001) ............................................................................................ 11

<u>DeWitt v. Lieberman</u>,
 48 F.Supp. 2d 280 (S.D.N.Y. 1999) ................................................................. 16

<u>Doe v. City of New York</u>,
 583 F.Supp. 2d 444 (S.D.N.Y. 2008) (Jones, J.) ............................................. 11

<u>Eugenio v. Walder</u>,
 2009 WL 1904526 (S.D.N.Y. July 2, 2009) ..................................................... 6, 7

<u>Ferguson v. New Venture Gear, Inc.</u>,
 2009 WL 2823892 (N.D.N.Y. Aug. 31, 2009) ................................................. 11

<u>Foxworth v. Am. Bible Soc'y</u>,
 03 Civ. 3005, 2005 WL 1837504 (S.D.N.Y. July 28, 2005), <u>aff'd</u>, 180 Fed. Appx. 294
 (2d Cir. May 16, 2006) ........................................................................................ 6, 7

<u>Friends of Falun Gong v. Pacific Cultural Enter., Inc.</u>,
 288 F.Supp. 2d 273 (E.D.N.Y. 2003), <u>aff'd</u>, 109 Fed.Appx. 442 (2d Cir. 2004) ..................... 8

Galdieri-Ambrosini v. Nat'l Realty & Development Corp.,
    136 F.3d 276 (2d Cir. 1998) ........................................................................................... 12

Hollander v. Am. Cyanamid Co.,
    895 F.2d 80 (2d Cir. 1990) ............................................................................................ 15

Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,
    515 U.S. 557 (1995) .......................................................................................................... 8

Hustler v. Falwell,
    485 U.S. 46 (1988) ...................................................................................................... 9, 10

Immuno AG v. Moor-Jankowski,
    77 N.Y.2d 235 (1991) ....................................................................................................... 8

Kendricks v. Westhab, Inc.
    163 F.Supp. 2d 263 (S.D.N.Y. Sept. 28, 2001), aff'd, 40 Fed.Appx. 619 (2d Cir.,
    2002) .............................................................................................................................. 13

Krasner v. HSH Nordbank AG,
    2010 WL 86845 (S.D.N.Y. Jan 7, 2010) ................................................................. 11, 13

Kunzler v. Canon, USA, Inc.,
    257 F.Supp. 2d 574 (E.D.N.Y. 2003) ...................................................................... 6, 10

Little v. Nat'l Broadcasting Co., Inc.
    210 F. Supp 2d 330 (S.D.N.Y. 2002) ............................................................................ 12

Lyle v. Warner Bros.,
    132 P.3d 211 (Cal. 2006) ................................................................................................. 9

Marvelli v. CHAPS Comm. Health Ctr.,
    193 F.Supp. 2d 636 (E.D.N.Y. 2002) ........................................................................... 17

Mathirampuzha v. Potter,
    548 F.3d 70 (2d Cir. 2008) ............................................................................................ 11

Meadows v. Planet Aid, Inc.,
    2009 WL 3734316 (E.D.N.Y. Nov. 4, 2009) ................................................................ 13

Meyer v. William Floyd Union Free Sch. Dist.,
    2008 WL 4415271 (E.D.N.Y. Sept. 24, 2008) ............................................................. 16

Miami Herald Pub. Co. v. Tornillo,
    418 U.S. 241 (1974) .......................................................................................................... 8

Milne v. Navigant Consulting,
    2009 WL 4437412 (S.D.N.Y. Nov. 30, 2009) .............................................................. 15

Monclova v. City of New York,
    2008 WL 822117 (E.D.N.Y. Mar. 26, 2008)..........................................................15

Moncrief v. New York Public Library,
    2009 WL 2171317 (2d Cir. July 21, 2009)...........................................................13

New York County Bd. of Ancient Order of Hibernians v. Dinkins,
    814 F.Supp. 358 (S.D.N.Y. 1993) .........................................................................9

Nicastro v. Runyon,
    60 F.Supp.2d 181 (S.D.N.Y.1999) .......................................................................16

Panzarino v. Deloitte & Touche LLP,
    2009 WL 3539685 (S.D.N.Y. Oct 29, 2009) (Jones, J.)....................................12, 13

Pinero v. Long Island State Veterans Home,
    375 F.Supp.2d 162 (E.D.N.Y. 2005) ....................................................................15

Rivoli v. Gannett Co.,
    327 F.Supp. 2d 233 (W.D.N.Y. 2004)....................................................................8

Rodriguez v. Int'l Leadership Charter Sch.,
    2009 WL 860622 (S.D.N.Y. Mar. 30, 2009)..........................................................7

Schiano v. Quality Payroll Sys., Inc.,
    445 F.3d 597 (2d Cir. 2006) .................................................................................5

Stanley v. The Lawson Co.,
    993 F.Supp. 1084 (N.D. Ohio 1997) .....................................................................9

Velez v. Novartis Pharm. Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2007)..........................................................................17

Williams v. New York City Housing Authority,
    2009 WL 804137 (S.D.N.Y. Mar. 26, 2009)........................................................15

Wimmer v. Suffolk Co. Police Dep't,
    176 F.3d 125 (2d Cir. 1999) .............................................................................6, 10

## STATUTES

42 U.S.C. § 1981 ......................................................................................................5, 7

New York State Human Rights Law ..............................................................................7

New York City Human Rights Law ...............................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 3

First Amendment .......................................................................................................... passim

NY Constitution, Article I, Section 8 .......................................................................... 8, 10

Defendants News Corporation ("News Corp."), NYP Holdings, Inc., d/b/a The New York Post ("NYP"), Michelle Gotthelf and Daniel Greenfield submit this memorandum of law in support of their partial motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Second, Fourth and Seventh Causes of Action of the amended complaint ("Am. Compl.").[1]

## Preliminary Statement

In this action, plaintiffs Austin Fenner and Ikimulisa Livingston, respectively former and current African-American reporters for the New York Post newspaper (the "Post"), allege, among other things, that defendants unlawfully retaliated against plaintiffs after they expressed offense at a political cartoon published in the Post and which they allege cast President Barack Obama in a negative light.

Their claims of unlawful retaliation are insufficient as a matter of law and should be dismissed. Plaintiffs fail to plead, as they must, that they engaged in any activity legally protected from retaliation -- i.e., complaining about an unlawful employment practice. The alleged protected activity consists solely of a quotation from Mr. Fenner in an on-line article indicating that the published cartoon "churned [his] stomach," and Ms. Livingston's comment to her supervisor, Ms. Gotthelf, that the published cartoon was "very offensive to people of color."

However, the publication of the cartoon cannot constitute an unlawful employment practice as a matter of law. First, it unquestionably is protected editorial speech under the First Amendment and therefore not actionable under workplace anti-discrimination laws. Moreover, it was directed at the general public and not at the workplace and was a single incident entirely insufficient to cause the plaintiffs, much less an objectively reasonable person, to believe that they were speaking out against an unlawful hostile work environment.

---

[1] Submitted herewith in support of the motion is the declaration of Marc E. Kasowitz, dated January 27, 2010. A copy of the amended complaint ("Am. Compl.") is annexed to the Kasowitz declaration as Exhibit A.

The retaliation claims also fail for a number of other independent reasons. For example, as relates to Fenner, he fails to plead (because he cannot) that any defendant had knowledge of his alleged protected activity -- it goes without saying that one cannot suffer retaliation for doing something of which the alleged retaliator was ignorant. In addition, as to both Fenner and Livingston, the allegedly protected activity was not sufficient to put defendants on notice -- as is required to state a claim -- that plaintiffs were complaining of an unlawful employment practice. Fenner's quotation in an on-line blog and Livingston's single conversation with a supervisor about being offended by a cartoon published in the <u>Post</u> are legally deficient to constitute a complaint about an unlawful employment practice, especially when that incident concerns the publication of First Amendment-protected editorial and political content. Defendants, therefore, had no reason to infer from their statements that plaintiffs were complaining about an unlawful <u>employment</u> practice, and certainly no objective reasonable person could believe that complaining about a cartoon published in a newspaper constitutes complaining about an unlawful <u>employment</u> practice.

Ms. Livingston's retaliation claims must fail also because she cannot plead a causal connection between her alleged complaint and defendants' purported adverse actions. It is fundamental to a retaliation claim that an adverse action must occur after the alleged protected activity for a plaintiff to state a claim. Here, however, Ms. Livingston alleges she was demoted in December 2008, two months prior to her purported protected activity. Moreover, her alleged negative performance review is insufficient by itself to plead the requisite causal connection because it was given to her six months following her purported complaint.

For these reasons, and as shown further below, the motion to dismiss should be granted.

**FACTS**[2]

Plaintiff Austin Fenner was a senior reporter on the <u>Post</u>'s City Desk until his employment termination on November 9, 2009. (Am. Compl. ¶¶ 30, 33, 91). Plaintiff Ikimulisa Livingston is a general assignment reporter for the <u>Post</u> who has been employed there for 13 years. (Am. Compl. ¶ 39). In March 2006, Ms. Livingston was assigned to cover the Queens State Supreme Court. (Am. Compl. ¶ 41).

On February 18, 2009 the <u>Post</u> published a cartoon which depicted two white police officers standing over a chimpanzee which they had just shot, captioned "They'll have to find someone else to write the next stimulus bill" (the "Stimulus Cartoon"). (<u>Id</u>. ¶ 66). Plaintiffs claim (incorrectly) that the Stimulus Cartoon represented President Barack Obama as the chimpanzee (<u>id</u>. ¶¶ 67-68, 74), and that white editors at the Post approved the cartoon over several alternate possibilities (<u>id</u>.¶ 68-69).[3]

Plaintiffs allege that they objected to the Stimulus Cartoon (<u>id</u>. ¶¶ 70, 77) as follows: Ms. Livingston told defendant Gotthelf that she believed "the cartoon was very offensive to people of color," a statement with which defendant Gotthelf agreed (<u>id</u>. ¶ 78); and Mr. Fenner was quoted in an interview with the online media website <u>Journal-isms</u> stating that the cartoon "churned my stomach when I saw it." (<u>Id</u>. ¶¶ 79-81). Mr. Fenner does not plead that any defendant was aware of the aforementioned quotation.

Plaintiffs allege that the <u>Post</u> retaliated against them for stating their objections to the Stimulus Cartoon. Specifically, Ms. Livingston alleges that in December 2008 she was removed from her assignment covering the Queens courthouse, banned from the newsroom, and denied

---

[2] The following allegations are taken from the complaint and, as required under Fed. R. Civ. P. 12(b)(6), are assumed to be true solely for the purposes of this motion.
[3] Plaintiffs neglect to include in their amended complaint the fact that the cartoon was published at the same time that it was being widely reported that Congress, not President Obama, drafted the stimulus bill and that the cartoon appeared within days of a highly-publicized incident in which police officers had shot and killed a pet chimpanzee which had attacked and maimed a woman in Connecticut.

3

the resources to perform her job (events which occurred two months prior to the publication of the Stimulus Cartoon and her conversation with Gotthelf). (Id. ¶¶ 92, 95). She also asserts that defendants Greenfield and Gotthelf gave her a poor performance review and a written warning in August 2009 (six months following her purported complaints). (Id. ¶ 105). Mr. Fenner alleges defendant Greenfield retaliated against him by yelling at him on his cellular phone while Mr. Fenner was on assignment in Milwaukee (id. ¶¶ 82-84), that defendant Gotthelf retaliated against him by taking Mr. Greenfield's side in the matter and failing to ask Mr. Fenner for his version of the events (id. ¶ 85), and that defendants also changed Mr. Fenner's work schedule from the 11 a.m. to 7 p.m. shift each day to the 9 a.m. to 5 p.m. shift four days per week, and the 2 p.m. to 10 p.m. shift on the fifth day (id. ¶¶ 86-87). Mr. Fenner further alleges that in May 2009 Greenfield and Gotthelf banned him from entering the Post's newsroom without permission, which also deprived him of the use of necessary resources (id. ¶¶ 88, 91, 98-100), and that on November 9, 2009 he was terminated. (Id. ¶¶ 110, 114-115).

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, where the complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citations omitted).

Here, as shown below, plaintiff's Second, Fourth and Seventh Causes of Action are insufficient on their face, do not state a plausible claim for relief and must be dismissed.

4

I.

## PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

To state a claim for retaliation, a plaintiff must allege that: (i) she engaged in a protected activity; (ii) her employer was aware of this activity; (iii) the employer took adverse employment action against her; and (iv) a causal connection exists between the alleged adverse action and the protected activity. Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006).[4]

The retaliation claims here fail, first, because the alleged protected activity – i.e., that in response to the Stimulus Cartoon, Mr. Fenner told an Internet publication that the Stimulus Cartoon "churned [his] stomach when [he] saw it," and Ms. Livingston told her supervisor in a single conversation "that the cartoon was very offensive to people of color" (Am. Compl. ¶¶ 78, 81) -- does not constitute protected conduct sufficient to give rise to a claim for retaliation. The Stimulus Cartoon was not an employment practice or directed at employees, the Stimulus Cartoon was protected by the First Amendment, and plaintiffs could not have had a good faith belief that they were complaining about an unlawful employment practice when they complained about the publication of the Stimulus Cartoon. The retaliation claims also fail because the plaintiffs failed to place the defendants on notice that they were complaining of unlawful discrimination -- and Fenner fails to plead that any defendant was even aware of his "complaint". Finally, Livingston's claims also fail because her allegations do not establish a causal nexus between protected activity and an adverse employment action.

---

[4] The elements are the same under Section 1981, NYSHRL and NYCHRL. See Eugenio v. Walder, 2009 WL 1904526, *12, n.11 (S.D.N.Y. July 2, 2009); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312 (2004).

A.      **Plaintiffs Did Not Engage in Protected Activity, Nor Could
They Have Believed in Good Faith That They Had Done So**

1.      **Complaints about the Stimulus Cartoon Are Not Protected Because
They Were Not Directed at an Unlawful Employment Practice**

Plaintiffs fail to satisfy the first element of a retaliation claim, the requirement of a

protected activity, because their complaints about the Stimulus Cartoon were not directed at an

unlawful employment practice. A retaliation claim is not cognizable unless the purported

protected activity is "directed at an unlawful <u>employment practice</u> of his employer." <u>Wimmer v.

Suffolk Co. Police Dep't</u>, 176 F.3d 125, 135 (2d Cir. 1999) (emphasis in original). Here,

plaintiffs' only purported protected activity was their objecting to the Stimulus Cartoon. The

cartoon was published in the February 18, 2009 edition of the <u>Post</u> for general circulation to its

wide readership, and was not an internal communication to the workplace generally, or to any

employees specifically. It did not appear anywhere else. Plaintiffs do not allege otherwise.

Courts which have considered whether employee complaints about an alleged

discriminatory act by their employer, which was not directed at the workplace, are protected by

anti-retaliation laws <u>have uniformly held that such complaints were not protected</u>. <u>See</u>, <u>e.g.</u>,

<u>Wimmer</u>, 176 F.3d at 135 (plaintiff's complaint about discriminatory conduct by police against

public not protected conduct); <u>Eugenio</u>, 2009 WL 1904526 at \*13 (plaintiff's complaint about

school district's discrimination against black schoolchildren not protected conduct); <u>Kunzler v.

Canon, USA, Inc.</u>, 257 F.Supp. 2d 574, 579 (E.D.N.Y. 2003) (plaintiff's complaint of

harassment by employee against customer not protected conduct); <u>see</u> <u>also</u> <u>Foxworth v. Am.

Bible Soc'y</u>, 03 Civ. 3005, 2005 WL 1837504, \*4 (S.D.N.Y. July 28, 2005) (complaint about

employer's discrimination against the "African-American marketplace" not a protected activity),

<u>aff'd</u>, 180 Fed. Appx. 294 (2d Cir. May 16, 2006). Here, since the cartoon was directed at the

6

public at large, and not directed at <u>Post</u> employees, complaints about it cannot constitute

protected conduct.

Nor can plaintiffs state a separate protected activity under 42 U.S.C. § 1981. Section

1981 provides that all persons "shall have the same right in every State and Territory to make

and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all

laws and proceedings for the security of persons and property as is enjoyed by white citizens."

42 U.S.C. § 1981(a). The amended complaint alleges, at most, that plaintiffs were offended by

the Stimulus Cartoon. They did not protest, as is required under § 1981, that defendants

discriminated against anyone in the making or enforcement of a contract. <u>See</u>, <u>e.g.</u>, <u>Foxworth</u>,

2005 WL 1837504 at *4 n.5 (rejecting § 1981 claim where "plaintiff has failed to establish that

[defendant] denied African-American consumers the opportunity to purchase [a bible] or

somehow sold [it] on discriminatory terms"). Attempts by plaintiffs to use § 1981 to plead

retaliation in this manner are routinely rejected by this Court. In <u>Rodriguez v. Int'l Leadership</u>

<u>Charter Sch.</u>, 2009 WL 860622 (S.D.N.Y. Mar. 30, 2009), for example, the Court held:

> [Section] 1981 ... has a specific function: It protects the equal
> rights of all persons within the jurisdiction ... to make and enforce
> contracts without respect to race. <u>Where a plaintiff's allegations do
> not encompass[ ] a complaint of retaliation against a person who
> has complained about a violation of another person's contract-
> related right, the plaintiff's claim should be dismissed.</u>
>
> Rodriguez[] does not allege that Defendants violated her students'
> contract-related rights because of the students' race or national
> origin. She is bringing a claim related to her own employment. Her
> Section 1981 claim must therefore also be dismissed.

<u>Id.</u> at *6 (emphasis added) (internal quotations and citations omitted); <u>see also</u> <u>Eugenio</u>, 2009

WL 1904526 at *13 (teacher's complaint about discrimination against African-American

students "does not... constitute protected activity pursuant to Section 1981 because the alleged

discrimination ... did not impair such students' rights to enter into contracts or rights under any

existing contractual relationships"). Thus, because the <u>Post</u>'s publication of the Stimulus
Cartoon in its newspaper is not an unlawful employment act, plaintiffs' claims for retaliation
based on one complaint from each plaintiff about it must be dismissed.

    **2.     Plaintiffs Do Not Allege That They Challenged an
           Unlawful Employment Practice Because the Stimulus
           Cartoon Is Protected First Amendment Speech**

       A complaint about the Stimulus Cartoon is not a complaint about an unlawful
employment practice for the additional, independent reason that the <u>Post</u>'s right to publish the
cartoon is protected and absolutely guaranteed by the First Amendment. A newspaper's editorial
independence is fundamental to the First Amendment, regardless of how controversial its content
may be.[5] <u>Miami Herald Pub. Co. v. Tornillo</u>, 418 U.S. 241, 255 (1974) (First Amendment
affords unequivocal protection "to editorial judgment and to the free expression of views on …
issues, however controversial") (quotation marks omitted); <u>Rivoli v. Gannett Co.</u>, 327 F.Supp. 2d
233, 241 (W.D.N.Y. 2004) (newspaper publisher enjoys First Amendment right to complete
control over its editorial content).

       When anti-discrimination laws implicate First Amendment rights to free expression, the
Supreme Court has held that anti-discrimination laws may not be used to proscribe an
organization's First Amendment right to advance its message or product. See <u>Hurley v. Irish-
American Gay, Lesbian & Bisexual Group of Boston</u>, 515 U.S. 557, 573 (1995) (the use of a
public anti-discrimination accommodations law to prevent parade organizers from excluding
marchers with contrary messages "violates the fundamental rule of protection under the First
Amendment, that a speaker has the autonomy to choose the content of his own message"); <u>see</u>

---

[5] Freedom of the press is also a fundamental right under New York's Constitution. <u>See</u> NY Constitution, Article I,
Section 8 (every citizen has the right to "freely speak, write and publish his or her sentiments on all subjects, being
responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty… of the press.").
In fact, the protection New York's Constitution affords speech is, if anything, even broader than that of the U.S.
Constitution. <u>See</u> <u>Immuno AG v. Moor-Jankowski</u>, 77 N.Y.2d 235, 249 (1991).

also Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F.Supp. 2d 273, 286 (E.D.N.Y.

2003), aff'd, 109 Fed.Appx. 442 (2d Cir. 2004) (discrimination and harassment claims against

newspaper for publishing articles critical of plaintiff "would raise serious concerns as to the First

Amendment rights of the defendants"); Stanley v. The Lawson Co., 993 F.Supp. 1084, 1089

(N.D. Ohio 1997) ("if Title VII … required Defendant to remove the adult magazines from its

stores because an employee found them offensive, those laws would violate the First Amend-

ment"); New York County Bd. of Ancient Order of Hibernians v. Dinkins, 814 F.Supp. 358,

369 (S.D.N.Y. 1993) (city commission violated constitutional rights of parade organizers,

because "by forcing the inclusion of [gay marchers] in the parade, the Commission sought to

dictate how the Parade sponsors would express their thoughts"); Lyle v. Warner Bros., 132 P.3d

211, 297 (Cal. 2006) (Chin, J., concurring) (lawsuits "directed at restricting the creative process

in a workplace whose very business is speech related, present a clear and present danger to

fundamental free speech rights.… [which] is especially serious if the speech that creates the

hostile work environment is an inherent part of the employer's business") (emphasis in original).

 The Supreme Court has further clarified that First Amendment protection applies equally

– if not especially – to political cartoons.  In Hustler v. Falwell, 485 U.S. 46 (1988), the Court

held that the First Amendment barred a nationally known minister's claim for intentional

infliction of emotional distress arising from Hustler's publication of a cartoon depicting him as

having engaged in a drunken incestuous rendezvous with his mother in an outhouse.  The Court

noted that political cartoons have a longstanding history in political debate:

> The art of the cartoonist is often not reasoned or evenhanded, but
> slashing and one-sided.… "The political cartoon is a weapon of
> attack, of scorn and ridicule and satire.…"  Despite their
> sometimes caustic nature, from the early cartoon portraying
> George Washington as an ass down to the present day, graphic

depictions and satirical cartoons have played a prominent role in
public and political debate.

485 U.S. at 54 (reaffirming "longstanding refusal to allow damages to be awarded because the

speech in question may have an adverse emotional impact on the audience," id. at 55) (citation

omitted).

In sum, the free speech protections afforded by the First Amendment to the U.S.

Constitution and Article I of the New York State Constitution mandate dismissal of plaintiffs'

retaliation claims because the Stimulus Cartoon is protected First Amendment expression that

cannot be abridged by anti-discrimination laws.

> **3.  Plaintiffs Cannot Allege That They Had a Good Faith Belief That
> Their Complaints Challenged an Unlawful Employment Practice
> Because the Cartoon Was Not an Employment Practice, Was
> Protected Speech, and Because a Single Incident of Purported
> Harassment Is Insufficient as a Matter of Law To Constitute a
> Hostile Work Environment**

To satisfy the first element of retaliation, engaging in protected conduct, plaintiffs must

also demonstrate a "good faith, reasonable belief that the underlying challenged actions of the

employer violated the law." Wimmer, 176 F.3d at 134.  The good faith component of a

retaliation claim "is satisfied only if the conduct complained about is plainly an employment

practice, whether or not that practice is engaged in by individuals who stand in an employment

relationship with the plaintiff." Kunzler, 257 F.Supp. 2d at 583.

Here, it is plain that the publication of the cartoon did not constitute an employment

practice, let alone an unlawful one.  In addition, it was well-known to the plaintiffs, self-

proclaimed experienced reporters, that the publication of the cartoon and the Post's editorial

independence are protected by the First Amendment.

Nor can plaintiffs claim that they engaged in protected activity by objecting to a hostile

work environment.  It is black letter law that one single incident -- the publication of the cartoon

-- cannot constitute a hostile work environment unless it is "extraordinarily severe." See Doe v. City of New York, 583 F.Supp. 2d 444, 449 (S.D.N.Y. 2008) (Jones, J.). Such an incident requires "an intolerable alteration of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job." Mathirampuzha v. Potter, 548 F.3d 70, 73 (2d Cir. 2008) (summary judgment granted to employer where plaintiff alleged only a single incident where supervisor "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye") (internal citations and quotations omitted). A single incident that merely leaves an employee "extremely offended" and "uncomfortable" is insufficient to state a plausible claim. See Krasner v. HSH Nordbank AG, 2010 WL 86845, *10, n.10 (S.D.N.Y. Jan 7, 2010) (dismissing claim based on a single incident in which plaintiff's supervisor forced plaintiff to observe him indulging with strippers).

A plaintiff thus fails to meet the first element of a retaliation claim when he or she complains of a single incident of harassment that "[n]o reasonable person could have believed… violated Title VII[]." Clark County School Dist. v. Breeden, 532 U.S. 268, 271-72 (2001) (reinstating district court grant of summary judgment to employer, holding belief that supervisor's comment concerning sexually explicit statement on job application constituted a hostile work environment was insufficient to allege protected activity); Chenette v. Kenneth Cole Productions, Inc., 2009 WL 2837626, *3 (2d Cir. Sept. 4, 2009) (granting summary judgment to employer, holding no reasonable person would believe that a single kiss constituted a hostile work environment); Ferguson v. New Venture Gear, Inc., 2009 WL 2823892, *7 (N.D.N.Y. Aug. 31, 2009) (granting summary judgment to employer, holding "[n]o objectively reasonable person could have believed that Defendant['s] plant was in the grip of a hostile work

environment infected by severe or pervasive racism based on the September 27, 2003 [racial] comments of three of Plaintiffs' white co-workers.").

Here, plaintiffs' complaints were about a single incident -- the publication of the Stimulus Cartoon -- an "incident" which did not even take place in the workplace.  As such, the plaintiffs could not have held an objectively good faith belief that the Post was engaged in an unlawful discriminatory practice.  For these reasons as well, therefore, the retaliation claims must be dismissed.

**B.      Plaintiffs Fail to Place Defendants on Notice of Their
         Complaints About Unlawful Discrimination**

To satisfy the second prong of a retaliation claim, "the employer had to have been aware of the complaint and must have understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  Panzarino v. Deloitte & Touche LLP, 2009 WL 3539685, *11 (S.D.N.Y. Oct 29, 2009) (Jones, J.) (emphasis in original); Galdieri-Ambrosini v. Nat'l Realty & Development Corp., 136 F.3d 276, 292 (2d Cir. 1998) (same).  The "onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class."  Aspilaire v. Wyeth Pharmaceuticals, Inc., 612 F.Supp. 2d 289, 308 (S.D.N.Y. 2009).  Allegations that are "ambiguous or non-specific" are insufficient to put an employer on notice that an unlawful employment practice is occurring.  Id. at 310.

Defendants' awareness of a protected activity "cannot be shown by inferences alone." Little v. Nat'l Broadcasting Co., Inc. 210 F. Supp 2d 330, 384 (S.D.N.Y. 2002) (internal quotations omitted) (citing Gordon v. Kings County Hosp. Center, 2000 WL 1868091, *6 (E.D.N.Y. Oct. 25, 2000)).  Thus, where a plaintiff's purportedly protected complaint makes no mention of discrimination against an employee, a retaliation claim fails as a matter of law.  See

Krasner, 2010 WL 86845 at *13 (S.D.N.Y. Jan 7, 2010) (dismissing plaintiff's retaliation claim where complaint about an affair did not point to a broader atmosphere of sexual favoritism); Meadows v. Planet Aid, Inc., 2009 WL 3734316, *12 (E.D.N.Y. Nov. 4, 2009) (dismissing retaliation claim where employer had no reason to believe that the plaintiff's complaint over not being provided proper identification while being sent into neighborhoods known for violence against African-Americans was protected activity); Kendricks v. Westhab, Inc. 163 F.Supp. 2d 263, 271 (S.D.N.Y. Sept. 28, 2001), aff'd, 40 Fed.Appx. 619 (2d Cir., 2002) (dismissing retaliation claim where plaintiff did not allege that his employer was aware of his protests); see also Moncrief v. New York Public Library, 2009 WL 2171317, *2 (2d Cir. July 21, 2009).

Here, plaintiffs fail to allege defendants' awareness that they engaged in any protected activity. The entirety of Mr. Fenner's alleged protected activity is a single comment purportedly made to the online blog Journal-isms that the Stimulus Cartoon "churned [his] stomach when [he] saw it." (Am. Compl. ¶ 81.) To satisfy the second prong of a retaliation claim, however, an employee's comments must reflect complaints over their subjection to the employer's unlawfully discriminatory practices. Bazile v. City of New York 215 F.Supp. 2d 354, 363 (S.D.N.Y. 2002), aff'd 64 Fed. Appx. 805 (2d Cir. 2003) (granting summary judgment and rejecting attempt by plaintiff police officer to rely on statements made to a reporter for the Daily News, which did not mention discrimination). The mere expression of offense or disgust at the actions of one's employer is insufficient to allege that such offense is based on discrimination, as opposed to the myriad other reasons a person may feel upset or offended. See, e.g., Panzarino, 2009 WL 3539685 at *11 (granting summary judgment, holding that plaintiff's complaint that "many employees were taken aback by" supervisor's request that an employee work on an engagement with an African-American prospective client because the employee was African-American was

13

not a protected activity because the plaintiff did not state her belief that the practice was specifically discriminatory).  Thus, the mere allegation that the Stimulus Cartoon "churned [Fenner's] stomach" is insufficient to put defendants on notice that he was challenging an unlawful employment practice.

Further, Mr. Fenner fails to allege, as he must, that defendants had knowledge of the on-line article in which his stomach-churning comment appeared.  See Bazile, 215 F.Supp. at 363. Mr. Fenner implausibly asserts "that the interview would be an effective outlet to make his complaints about the cartoon known to management at the Post . . .."  Am. Compl. ¶ 80. Notwithstanding Mr. Fenner's self-serving description of the online blog as a "widely read and well-respected publication," he does not make any allegation that defendants read the article, much less the eight words he is quoted as saying within it.  Nor does he allege that any defendant was even aware of the article or his quotation.  Tellingly, Mr. Fenner does not allege that anyone at the Post ever mentioned the article to him.

Ms. Livingston claims only that she told her supervisor "that the cartoon was very offensive to people of color."  Am. Compl. ¶ 78 (emphasis added).  As demonstrated above, defendants had no reason to believe Ms. Livingston's purported complaints concerned an unlawful employment practice, much less a hostile work environment, because: (i) her complaint concerned newspaper content that was not directed at the workplace; (ii) her complaint concerned the editorial content of the Post, which is non-actionable speech absolutely protected by the First Amendment; and (iii) her complaint concerned a single incident which is not, as a matter of law, sufficient to constitute a hostile work environment.

**C.      Plaintiff Livingston Fails to Plead a Causal Connection Between
Her Alleged Protected Activity and Her Alleged Retaliation**

Where an adverse action precedes the protected activity "[t]here can be no inference of retaliatory animus … as a matter of law." Pinero v. Long Island State Veterans Home, 375 F.Supp.2d 162, 168 (E.D.N.Y. 2005); see also Williams v. New York City Housing Authority, 2009 WL 804137, *8 (S.D.N.Y. Mar. 26, 2009) (dismissing retaliation claim where the alleged adverse action preceded the alleged protected activity); Milne v. Navigant Consulting, 2009 WL 4437412, *9 (S.D.N.Y. Nov. 30, 2009) (dismissing plaintiff's retaliation claim where plaintiff did not allege that management was aware of her protected activity before the adverse action).

Here, Ms. Livingston claims she was demoted from her position and banned from the newsroom in December 2008, which was two months prior to her purported protected activity in February 2009.  Although Ms. Livingston alleges that her demotion and newsroom "ban" continued after her purportedly protected activity, "[t]he continuation of an adverse employment condition that existed prior to the protected activity undermines an inference that the protected activity prompted the adverse condition." Brutus v. Silverseal Corp., 2009 WL 4277077, *9 (S.D.N.Y. Nov. 24, 2009) (citing Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001); see also Monclova v. City of New York, 2008 WL 822117, *8 (E.D.N.Y. Mar. 26, 2008) ("evidence of prior adverse actions, which preceded the protected activity and could not have been retaliatory, can defeat the inference of causation, so long as defendants' actions remained consistent before and after the protected activity took place").

The only adverse action pled by Ms. Livingston, therefore, is a negative performance review, which occurred six months following her purportedly protected activity.  A six-month lapse between an allegedly protected act and an alleged act of retaliation is too long, as a matter of law, to demonstrate any causal connection. Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-

86 (2d Cir. 1990) (affirming summary judgment, finding no causal connection given three-month gap); Meyer v. William Floyd Union Free Sch. Dist., 2008 WL 4415271 (E.D.N.Y. Sept. 24, 2008) (motion to dismiss retaliation claim granted because of a two-month time gap between complaint and termination); Nicastro v. Runyon, 60 F.Supp.2d 181, 185 (S.D.N.Y.1999) (retaliation claims "routinely dismissed" when as few as three months lapse between the protected activity and retaliatory conduct).  Livingston does not even attempt to plead any facts -- because there are none -- that could otherwise provide the legally required nexus.

Since the facts pled cannot establish a causal connection between Livingston's complaint -- even if it were protected activity (which it is not) -- and any adverse employment action, Livingston's retaliation claim should be dismissed based on her failure to establish causation as well.[6]

## II.

### NEWS CORP. IS NOT PLAINTIFF'S EMPLOYER AND OTHERWISE IS NOT A PROPER DEFENDANT

Plaintiffs' claims must be dismissed against News Corp., which is the ultimate parent company of NYP, and was never plaintiffs' employer.  Nor did plaintiff plead any facts to the contrary.  It is well-settled that a parent company is not liable for the torts of its subsidiary, unless it can be shown that the parent exercises complete dominion and control over the subsidiary.  See Billy v. Consolidated Mach. Tool Corp., 51 N.Y.2d 152, 163 (1980) (that defendant corporation was a wholly-owned subsidiary of the parent corporation was insufficient to support imposition of liability on parent for the acts of its subsidiary).  A parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of "(1) interrelation of

---

[6] In addition, to the extent the Fifth and Eighth Causes of Action against the individual defendants for aiding and abetting relate to the retaliation claims, they should be dismissed as well.  DeWitt v. Lieberman, 48 F.Supp. 2d 280, 293 (S.D.N.Y. 1999).

operation, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Velez v. Novartis Pharm. Corp., 244 F.R.D. 243, 250 (S.D.N.Y. 2007); see also Marvelli v. CHAPS Comm. Health Ctr., 193 F.Supp. 2d 636, 653 (E.D.N.Y. 2002) (applying same 4-factor test to Section 1981 claims).  Plaintiff does not and cannot allege these elements here, and her conclusory allegations concerning News Corp. are wholly insufficient.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the retaliation claims of the

Amended Complaint should be granted in its entirety.

Dated: New York, New York
       January 27, 2010

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
    Marc E. Kasowitz (mkasowitz@kasowitz.com)
    Hector Torres (htorres@kasowitz.com)
    Mark W. Lerner (mlerner@kasowitz.com)
    Blythe E. Lovinger (blovinger@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

    J. Jordan Lippner (jlippner@newscorp.com)

Senior Vice President & Deputy General Counsel
News America Incorporated
1211 Avenue of the Americas
New York, New York 10036
Tel.: (212) 852-7166
Fax: (212) 852-7214

Attorneys for Defendants News Corporation, NYP
Holdings, Inc., d/b/a the New York Post, Michelle
Gotthelf and Daniel Greenfield