UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
AUSTIN FENNER and                                           :
IKIMULISA LIVINGSTON,                                       :   Civil Action No.: 09 CV 9832 (BSJ)
                                                            :
                        Plaintiffs,                         :
                                                            :
            vs.                                             :
                                                            :
NEWS CORPORATION, NYP HOLDINGS,                             :
INC., d/b/a THE NEW YORK POST,                              :
MICHELLE GOTTHELF and DANIEL                                :
GREENFIELD, in their official and individual                :
capacities,                                                 :
                                                            :
                        Defendants.                         :
------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Hector Torres (htorres@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

Attorneys for Defendants News Corporation,
NYP Holdings, Inc., d/b/a the New York Post,
Michelle Gotthelf and Daniel Greenfield

# TABLE OF CONTENTS

**Page**

Preliminary Statement ..................................................................................................................1

I. PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED ................................2

    A. Plaintiffs' Complaints About the Stimulus Cartoon Were Not Protected Activity .................................................................................................................2

        1. Complaints about the Stimulus Cartoon Were Not Directed at an Unlawful Employment Practice.................................................................2

        2. The Stimulus Cartoon Is Protected First Amendment Speech ....................4

        3. Plaintiffs Do Not And Cannot Show That They Had a Good Faith Belief That Their Complaints Challenged an Unlawful Employment Practice.........................................................................................................5

    B. Plaintiffs Do Not and Cannot Show That They Placed Defendants on Notice of Their Complaints about Unlawful Discrimination .............................7

    C. Plaintiff Livingston Does Not and Cannot Show a Causal Connection Between Her Alleged Protected Activity and Her Alleged Retaliation .................9

II. NEWS CORP. IS NOT PLAINTIFFS' EMPLOYER AND OTHERWISE IS NOT A PROPER DEFENDANT ..........................................................................................10

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

CASES

Aspilaire v. Wyeth Pharmaceuticals, Inc.,
    612 F. Supp. 2d 289 (S.D.N.Y. 2009) ................................................................. 3, 9

Bazile v. City of New York,
    215 F. Supp. 2d 354 (S.D.N.Y. 2002) .................................................................... 8

Bazile v. City of New York,
    64 Fed. Appx. 805 (2d Cir. 2003) .......................................................................... 8

Big Apple Tire, Inc. v. Telesector Resources Group, Inc.,
    476 F. Supp. 2d 314 (S.D.N.Y. 2007) .................................................................... 5

Brightman v. St. Vincent's Hosp,
    2000 U.S. Dist. LEXIS 9781 (S.D.N.Y. July 13, 2000) ......................................... 7

CBOCS West, Inc. v. Humphries,
    128 S. Ct. 1951 (2008) ........................................................................................... 4

Cioffi v. Averill Park Central Sch. District Board of Education,
    444 F.3d 158 (2d Cir. 2006) ................................................................................... 7

Collette v. St. Luke's Roosevelt Hospital,
    2002 U.S. Dist. LEXIS 18164 (S.D.N.Y. Sept. 24, 2002) ..................................... 9

Conway v. Microsoft Corp.,
    414 F. Supp. 2d 450 (S.D.N.Y. 2006) .................................................................... 7

Davis v. City of New York,
    2000 U.S. Dist. LEXIS 18520 (S.D.N.Y. Dec. 27, 2000) ...................................... 7

Dawson v. Delaware,
    503 U.S. 159 (1992) ............................................................................................... 5

Eder v. City of New York,
    2009 WL 362706 (S.D.N.Y. Feb. 12, 2009) .......................................................... 5

EEOC v. Thomas Dodge Corp. of N.Y.,
    524 F. Supp. 2d 227 (E.D.N.Y. 2007) .................................................................... 9

Manson v. Little Rock Newspapers, Inc.,
    42 F. Supp. 2d 856 (E.D. Ark. 1999), aff'd, 200 F.3d 1172 (8th Cir. 2000) .......... 6

Patterson v. County of Oneida, New York,
    375 F.3d 206 (2d Cir. 2004) ................................................................................ 4

Phelps v. Hamilton,
    59 F.3d 1058 (10th Cir. 1995) ............................................................................. 5

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998) ................................................................................ 7

R.A.V. v. St. Paul,
    505 U.S. 377 (1992) ............................................................................................ 4

Roberts v. United States Jaycees,
    468 U.S. 609 (1984) ............................................................................................ 4

Saxe v. State College Area School Dist.,
    240 F.3d 200 (3rd Cir. 2001) .............................................................................. 5

Velez v. Novartis Pharm. Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2007) ....................................................................... 10

**OTHER AUTHORITIES**

First Amendment ..................................................................................................... passim

Defendants News Corp., NYP, Michelle Gotthelf and Daniel Greenfield submit this reply memorandum of law in further support of their partial motion to dismiss and in response to plaintiffs' memorandum of law in opposition to the motion ("Pl. Mem.").[1]

**Preliminary Statement**

In their initial memorandum of law, defendants showed that plaintiffs' retaliation claims must be dismissed because they claim that they suffered adverse employment actions due to their purported protected activity of complaining about the Post's publication of the Stimulus Cartoon -- but that publication was not an unlawful employment practice and was protected by the First Amendment. See Def. Mem. 5-12.

Plaintiffs do not and cannot show otherwise. Instead, plaintiffs try to shift gears from their amended complaint and now claim in their opposition brief that they were complaining not about the Stimulus Cartoon, but about workplace discrimination. However, the amended complaint speaks for itself – it alleges only that plaintiffs complained about what they regarded as an offensive published cartoon, not about workplace discrimination or anything else.

Plaintiffs thus do not, as they cannot, argue that the publication of the Stimulus Cartoon was itself an employment practice; rather, their arguments depend entirely on the claim that their complaints were really not about the cartoon, but about employment discrimination. That claim, however, is belied by the plain language of the amended complaint and the length to which plaintiffs have gone to rewrite that language in their arguments. Moreover, plaintiffs likewise do not and cannot refute defendants' showing that the only statements attributed to them in the amended complaint could not possibly have put defendants on notice that plaintiffs were

---

[1] Except as otherwise defined herein, capitalized terms have the meanings assigned to them in defendants' initial memorandum of law in support of the motion ("Def. Mem.").

complaining about an alleged "discriminatory working environment" (Pl. Mem. 1) or "discriminatory attitudes of managers." (Pl. Mem. 1.)

In short, plaintiffs have not stated any retaliation claim, and defendants' partial motion to dismiss should be granted with prejudice.

## I.

## PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED

### A. Plaintiffs' Complaints About the Stimulus Cartoon Were Not Protected Activity

#### 1. Complaints about the Stimulus Cartoon Were Not Directed at an Unlawful Employment Practice

Defendants showed that plaintiffs' statements about the Stimulus Cartoon did not constitute protected activity because they did not concern workplace conduct. (Def. Mem. 6-8.) In response, plaintiffs argue that their complaints were not really about the cartoon, but about the supposed "pervasive discrimination that was the hallmark of the working environment at the Post." (Pl. Mem. 9) (emphasis in original.) This argument is belied by the amended complaint itself, which alleges only that plaintiffs' complaints were about the Stimulus Cartoon:

- "Ms. Livingston told her supervisor Defendant Gotthelf that the cartoon was very offensive to people of color...." (Am. Compl. ¶ 78.) (emphasis added).
- "Mr. Fenner believed that the interview [in which he is quoted as stating that the cartoon "churned my stomach."] would be an effective outlet to make his complaints about the cartoon known...." (Id. ¶¶ 80, 81.) (emphasis added).
- "[A]fter Mr. Fenner publicly opposed the racist cartoon about President Obama on an online website, he was repeatedly retaliated against . . . ." (Id. ¶ 10.) (emphasis added).
- "[A]fter Ms. Livingston complained about the cartoon, the Company retaliated against her . . . ." (Id. ¶ 11.) (emphasis added).
- "Both Ms. Livingston and Mr. Fenner objected to the cartoon about President Obama." (Id. ¶ 77.) (emphasis added).

Nowhere in the amended complaint do plaintiffs allege that they ever engaged in any purported protected activity, other than the aforementioned complaints about the Stimulus Cartoon.

2

Plaintiffs nonetheless try to argue that their complaints should be deemed to be broader than solely about the Stimulus Cartoon because they were "spurred" or "prompted" by alleged discrimination. (Pl. Mem. 9.) This argument is unavailing; even if plaintiffs "believed that [they] were] the victim[s] of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity." Aspilaire v. Wyeth Pharmaceuticals, Inc., 612 F. Supp. 2d 289, 309 (S.D.N.Y. 2009).

Plaintiffs also argue that their complaints about the Stimulus Cartoon concerned the Post's purportedly inadequate response to its employees -- in effect, being "unapologetic" (Pl. Mem. 9) -- regarding the Stimulus Cartoon. However, again, the amended complaint alleges only that plaintiffs objected to the cartoon; it does not allege that the plaintiffs complained about the Post's response; or about the Post's alleged "acceptance" or "embrace" of the cartoon's alleged message (Pl. Mem. 9). Moreover, contrary to plaintiffs' contention (Pl. Mem. 10), Paragraph 78 of the amended complaint does not allege that Ms. Livingston sought to have the Post apologize; it alleges only that Ms. Gotthelf did not get the Company to apologize. In any event, even if the amended complaint had alleged an "inadequate apology," a failure to apologize does not constitute an employment action. This is all the more true where, as here, the act for which the apology is sought is conduct protected by the First Amendment.[2]

Finally, plaintiffs' retaliation claims fail because if the publication of the Stimulus Cartoon was not an unlawful employment practice -- and it was not (and plaintiffs do not now

---

[2] Plaintiffs' argument would mean that an employee of a magazine which publishes objectionable content protected by the First Amendment could convert such content into a discriminatory employment action merely by complaining to management about the content and then citing the failure to apologize as a basis for suing. This is not, and cannot be, the law. See Def. Mem. 8-10.

3

claim that it was) -- then, *a fortiori*, the acceptance of, or failure to apologize for, the cartoon's publication cannot be an unlawful employment practice.[3]

### 2. The Stimulus Cartoon Is Protected First Amendment Speech

Defendants demonstrated that plaintiffs' alleged complaints about the Stimulus Cartoon did not constitute protected activity because the publication of the cartoon was protected First Amendment activity. (Def. Mem. 8-10.) Again, plaintiffs do not and cannot refute this showing, and they ignore controlling precedent holding that anti-discrimination laws may <u>not</u> be used to limit an organization's First Amendment right to advance its message. (Def. Mem. 8-9.)[4]

Instead, citing <u>Doe v. City of New York</u>, 583 F. Supp. 2d 444, 448 (S.D.N.Y. 2008) (Jones, J.), plaintiffs argue that their claims do not violate the First Amendment because they are "incidental to the content of the speech." (Pl. Mem. 13.) Plaintiffs do not and cannot explain how allegations that they "publicly opposed the racist cartoon," "complained about the cartoon," "objected to the cartoon," and sought an outlet to make "complaints about the cartoon known," could be <u>incidental</u> to speech. (Am. Compl. ¶¶ 10-11, 77, 80.) It could not be clearer from the amended complaint that plaintiffs' alleged complaints targeted the content of the speech itself.

Plaintiffs also claim that their complaints about the Stimulus Cartoon did not concern protected First Amendment content because they "were not rooted in the content of the Cartoon itself, but rather, in the racial animus they experienced in their employment..." (Pl. Mem. 12.)

---

[3] Plaintiffs' cases (Pl. Mem. 10) are thus entirely inapposite because, unlike here, those cases did concern allegations of unlawful employment practices. See <u>CBOCS West, Inc. v. Humphries</u>, 128 S. Ct. 1951, 1954 (2008) (allegations that a black co-worker's employment was terminated for race-based reasons); <u>Patterson v. County of Oneida, New York</u>, 375 F.3d 206, 212 (2d Cir. 2004) (allegations that employer maintained a policy of terminating the employment of African-American officers prior to the completion of their initial one-year probationary period).

[4] Thus, plaintiffs' authority (Pl. Mem. 13), which holds only that certain speech may produce a Title VII violation in certain contexts, is entirely inapposite here. See <u>R.A.V. v. St. Paul</u>, 505 U.S. 377, 389 (1992) (bias-motivated disorderly conduct law was facially invalid under the First Amendment); <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 623-24 (1984) (public accommodations law requiring public organization to admit women is constitutional where the law did not impede the organization's ability to express its views).

However, nowhere in the amended complaint do plaintiffs allege that they protested this purported animus. Further, plaintiffs' argument proves too much: under plaintiffs' legal construct, plaintiffs could chill protected First Amendment speech simply by targeting the purportedly underlying animus of newspaper content, rather than the content itself.[5] The First Amendment does not allow such a result. In any event, plaintiffs' sleight of hand cannot succeed because animus itself is not an actionable employment practice. See Eder v. City of New York, 2009 WL 362706, *10 (S.D.N.Y. Feb. 12, 2009) (granting summary judgment dismissing hostile work environment claim because, even assuming animus, the alleged conduct was not actionable); Big Apple Tire, Inc. v. Telesector Resources Group, Inc., 476 F. Supp. 2d 314, 327 (S.D.N.Y. 2007) (same).

### 3. Plaintiffs Do Not And Cannot Show That They Had a Good Faith Belief That Their Complaints Challenged an Unlawful Employment Practice

Defendants showed that plaintiffs' alleged complaints about the Stimulus Cartoon were not protected activity because plaintiffs could not plausibly have had a good faith belief that they were complaining about an unlawful employment practice. (Def. Mem. 10-12.) Plaintiffs do not and cannot argue that they had a good faith belief that publication of the Stimulus Cartoon was an unlawful employment practice. Instead, they now urge that their alleged complaints "were not spurred by the publication of the Cartoon itself," but by the alleged admissions of high-level managers that they "had no problem with the racist message" and the Post's failure to interview Governor David Paterson. (Pl. Mem. 15.)

---

[5] Cases plaintiffs cite (Pl. Mem. 12-13) for the proposition that speech otherwise protected by the First Amendment may be admissible against a defendant are entirely inapposite. Neither Dawson v. Delaware, 503 U.S. 159 (1992), nor Saxe v. State College Area School Dist., 240 F.3d 200 (3rd Cir. 2001), holds that speech is admissible to show protected activity. Nor can it be used to show animus, even assuming animus were relevant here. See Phelps v. Hamilton, 59 F.3d 1058, 1068 (10th Cir. 1995) (holding political campaign statements were inadmissible to prove improper motive, to avoid chilling political debate).

Again, the contention that plaintiffs ever complained about anything other than the Stimulus Cartoon -- such as the managers' alleged reactions -- is belied by the plain words of the amended complaint. However, in any event, a newspaper editor allegedly stating that he had "no problem" with a purportedly offensive cartoon (Am. Compl. ¶ 73) is not an adverse employment practice. The refusal to disavow published editorial content cannot possibly be discriminatory, if publication of the content itself is not itself discriminatory. Indeed, as plaintiffs frame the issue, editorial content would be protected only so long as no employee complained about such content; otherwise, if the employer merely professes that it "had no problem" with the content, it has engaged in discrimination. Likewise, even assuming arguendo that the Post did reject an interview with Governor Paterson, that clearly is not an employment practice, and is entirely within its editorial discretion. (Def. Mem. 8.) See also Manson v. Little Rock Newspapers, Inc., 42 F. Supp. 2d 856, 865 (E.D. Ark. 1999), aff'd, 200 F.3d 1172 (8th Cir. 2000) (owners and editorial staff of the newspaper, not the plaintiff reporter, have the "right to control the content of the paper").

Finally, plaintiffs now claim that their complaints about the Stimulus Cartoon were not limited to the cartoon, and that plaintiffs "were expressing their belief that the Cartoon was a notorious culmination of the pervasive racism that they themselves had suffered throughout their employment with the Company." (Pl. Mem. 16.) However, again, there is no such allegation in the amended complaint that the plaintiffs made any such complaints to defendants, or that they voiced opposition to anything other than the single incident of the publication of the Cartoon.[6]

---

[6] Contrary to plaintiffs' aside (Pl. Mem. at 16 n.3), defendants' decision not to move to dismiss plaintiffs' discrimination claims is in no way a recognition that such claims have any merit, which certainly they do not. Indeed, defendants will demonstrate that plaintiffs' complaint is replete with false statements and mischaracterizations of the purported events and that defendants did not discriminate against either plaintiff.

6

B.  **Plaintiffs Do Not and Cannot Show That They Placed Defendants on Notice of Their Complaints about Unlawful Discrimination**

Defendants showed that plaintiffs' complaints about the Stimulus Cartoon do not satisfy the second prong of a retaliation claim because they were insufficient to place the Post on notice that they were complaining about unlawful discrimination. (Def. Mem. 12-14.) Plaintiffs do not and cannot refute this showing. Instead, they cite cases (Pl. Mem. 17) which are inapposite because, unlike here, the plaintiffs there had made explicit complaints about discriminatory acts or treatment they experienced. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 763 (2d Cir. 1998) (plaintiff filed sexual harassment complaints with both her employer and the New York Division of Human Rights);[7] Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 467 (S.D.N.Y. 2006) (employee lodged formal complaint with human resources which specifically indicated that the plaintiff believed she had been harassed); Brightman v. St. Vincent's Hosp, 2000 U.S. Dist. LEXIS 9781, at *9 (S.D.N.Y. July 13, 2000) (plaintiff specifically "told various supervisors about all of [the alleged harasser's] actions") (emphasis added). Here, plaintiffs did not inform defendants of any purportedly discriminatory acts.[8] An employee's statement that he or she was offended by editorial content is entirely insufficient to put an employer on notice that

---

[7] Plaintiffs' misleadingly claim (Pl. Mem. 17) that Quinn stands for the proposition that to demonstrate an employer's knowledge, a plaintiff "need not establish that she successfully described in that complaint conduct amounting to a violation of Title VII." Quinn, 159 F.3d at 769. That quotation, in context, clearly stands only for the uncontroversial proposition that a plaintiff must have a good faith belief that the allegedly objectionable conduct violated Title VII. Id. ("[Plaintiff] need not establish that she successfully described in that complaint conduct amounting to a violation of Title VII. She need only demonstrate that she had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'") (internal citations omitted)."

[8] Plaintiffs cite (Pl. Mem. 17-18) to Cioffi v. Averill Park Central Sch. District Board of Education, 444 F.3d 158 (2d Cir. 2006) and Davis v. City of New York, 2000 U.S. Dist. LEXIS 18520 (S.D.N.Y. Dec. 27, 2000) for the proposition that Mr. Fenner's public statement constitutes protected activity. Both cases, however, concerned First Amendment retaliation, which by their nature concern public statements, whereas, here, Mr. Fenner had far more logical means of putting defendants on notice of his complaints (i.e., telling them). Further, both cases are readily distinguishable because, unlike here, the employers there were clearly on notice of the complaints. See Cioffi, 444 F.3d at 161 (plaintiff complained via a press conference and a letter to his supervisor); Davis, 2000 U.S. Dist. LEXIS 18520, at *21 ("Given that plaintiff publicly spoke of matters of public concern and publicly campaigned for election and that defendants' actions were prompted by [plaintiff's] appearance on the Liberal Party ballot, [defendant] was obviously aware of his activities."). Here, Mr. Fenner does not even allege in the amended complaint that anyone at the Post was aware of his eight-word statement to an on-line blog.

7

the employee is complaining about unlawful employment discrimination. Moreover, Bazile v. City of New York, 215 F. Supp. 2d 354, 364-65 (S.D.N.Y. 2002) does not stand for the proposition that statements to a reporter may constitute protected activity if the plaintiff could demonstrate "through discovery, that he made other, more specific complaints to the reporter...." (Pl. Mem. 18.) Bazile stated only in dicta that the plaintiff offered no evidence of such statements to a reporter; i.e., it did not state that such an allegation would present a cognizable claim. Further, plaintiffs omit the fact that Bazile's true holding – i.e., that a plaintiff cannot base his retaliation claim on a purported interview with a newspaper reporter, when the "article itself reflects no complaint...that [plaintiff] was being subjected to discrimination" – was affirmed by the Second Circuit on appeal. Bazile v. City of New York, 64 Fed. Appx. 805, 808 (2d Cir. 2003).

Plaintiffs further argue that the amended complaint "clearly states" in Paragraph 78 that Ms. Livingston's complaint "was only one example of a number of [Ms. Livingston's] complaints of discrimination made to management at the Post." (Pl. Mem. 19.) This argument is false -- the complaint says no such thing. In fact, the amended complaint only alleges as follows:

> 77.   Both Ms. Livingston and Mr. Fenner objected to the cartoon about President Obama.
>
> 78.   By way of example only, Ms. Livingston told her supervisor Defendant Gotthelf that the cartoon was very offensive to people of color – and that Defendant Gotthelf *agreed* with Ms. Livingston. However, Defendant Gotthelf did absolutely nothing to get the Company to apologize to its employees of color for engaging in such blatant racism.

(Am. Compl. ¶¶ 77-78) (emphasis in original). The only interpretation of Paragraph 78, read in light of Paragraph 77, as it must be, is that all of Ms. Livingston's purported complaints (assuming others existed) concerned the Stimulus Cartoon.[9]

Finally, <u>Collette v. St. Luke's Roosevelt Hospital</u>, 2002 U.S. Dist. LEXIS 18164 (S.D.N.Y. Sept. 24, 2002) (Pl. Mem. 19-20) also is inapposite. The court in <u>Collette</u> found that "there is no question that [the employer] was aware of [plaintiff's] actions, since the protected activity she relies on consists exclusively of internal complaints," <u>id.</u> at *18, and noted that plaintiff had made multiple complaints to the employer concerning its lack of "EEO Compliance" in violating a federal executive order governing the posting of jobs by federal contractors. <u>Id.</u> at *13-14. Thus, whereas the plaintiff in <u>Collette</u> made specific discriminatory allegations, plaintiffs here claim, at most, that they harbored a belief of discrimination which they never disclosed to the <u>Post</u>. That is insufficient as a matter of law. See <u>Aspilaire</u>, 612 F. Supp. 2d at 309 ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity.").

## C. Plaintiff Livingston Does Not and Cannot Show a Causal Connection Between Her Alleged Protected Activity and Her Alleged Retaliation

Defendants showed that Ms. Livingston cannot establish a causal connection between her purported protected activity and her purported adverse employment actions because her alleged "ban" from the newsroom began in December 2008, two months <u>before</u> her alleged complaint about the Stimulus Cartoon, even if the ban continued after the complaint. (Def. Mem. 15-16.) Instead, plaintiffs again try to recast the allegations of the amended complaint by claiming now

---

[9] Plaintiffs misleadingly cite <u>EEOC v. Thomas Dodge Corp. of N.Y.</u>, 524 F. Supp. 2d 227 (E.D.N.Y. 2007) for the proposition that the mere allegation that plaintiff complained of discrimination, without addressing the substance, is sufficient. (Pl. Mem. at 19.) But that case is completely inapposite because there the complaint alleged explicitly that the plaintiff complained of "sexual harassment" to a manager. <u>Id.</u> at 234.

9

that there was a retaliatory decision after her complaint by the defendants to "explicitly ban her from the newsroom" and to "deprive her permanently" of resources. (Pl. Mem. 21.) But the amended complaint explicitly alleges that "since [Ms. Livingston's] Queens court beat was taken away in December 2008 [(i.e., she was "subjected to a ban from the newsroom", (Am. Compl. ¶ 92)], Ms. Livingston has been discriminatorily denied such necessary resources that are routinely given without restriction to White reporters." (Am. Compl. ¶95.) Contrary to plaintiffs' argument, not once does Ms. Livingston plead, as she must, any change in her employment conditions after the publication of the Stimulus Cartoon; the reference in paragraph 96 of the amended complaint to Defendant Greenfield once allegedly asking her "What are you doing here?" when she entered the newsroom is both undated and, even if this had occurred after her complaint, it is insufficient, as a matter of law, to establish a change in her working conditions.

## II.

### NEWS CORP. IS NOT PLAINTIFFS' EMPLOYER AND OTHERWISE IS NOT A PROPER DEFENDANT

Plaintiffs claim that they have pled that the Post and News Corp. "share common ownership, common premises, common directors and/or officers, and common financial control." (Pl. Mem. at 22.) However, as the cases cited in defendants' moving papers establish, the touchstones for imposing liability on a parent for the acts of its subsidiary are "(1) interrelation of operation, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Velez v. Novartis Pharm. Corp., 244 F.R.D. 243, 250 (S.D.N.Y. 2007). Because plaintiffs fail to plead specific facts establishing those critical elements, the conclusory claims against News Corp. should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in defendants' initial memorandum of law, defendants' motion to dismiss the Second, Fourth and Seventh Causes of Action of the amended complaint should be granted in its entirety with prejudice.

Dated: New York, New York
March 1, 2010

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: *[signature]*
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Hector Torres (htorres@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

J. Jordan Lippner (jlippner@newscorp.com)

Senior Vice President & Deputy General Counsel
News America Incorporated
1211 Avenue of the Americas
New York, New York 10036
Tel.: (212) 852-7166
Fax: (212) 852-7214

Attorneys for Defendants News Corporation, NYP Holdings, Inc., d/b/a the New York Post, Michelle Gotthelf and Daniel Greenfield