UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                    :

AUSTIN FENNER and                 :
IKIMULISA LIVINGSTON,       :
                                      :

                  Plaintiffs,    :     Civ. No.: 09 CV 9832 (LGS)
                                      :

               vs.             :
                                      :

NEWS CORPORATION, NYP HOLDINGS, :
INC., d/b/a THE NEW YORK POST,    :
MICHELLE GOTTHELF and , DANIEL  :
GREENFIELD, in their official and individual :
capacities,                       :
                                      :

                Defendants.   :
----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEWS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
Garrett D. Kennedy (gkennedy@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:  (212) 506-1700

Attorneys for Defendant
News Corporation

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    A.  The Post and News Corp. are Separate Entities ............................................... 2

        1. Labor Relations ..................................................................................... 3

        2. Financial and Other Operations ........................................................... 4

        3. Management and Board of Directors .................................................... 5

    B.  Plaintiffs Were Post Employees, and Not News Corp. Employees ................... 6

        1.  Fenner's Employment by the Post ........................................................ 6

        2.  Livingston's Employment by the Post .................................................. 7

ARGUMENT ................................................................................................................... 8

I.  SUMMARY JUDGMENT STANDARD ...................................................................... 8

II.  THE CLAIMS AGAINST NEWS CORP. MUST BE DISMISSED AS IT NEVER
    EMPLOYED PLAINTIFFS, EITHER IN FACT OR CONSTRUCTIVELY ...................... 9

    A.  Plaintiffs Were Not Employees of News Corp. .................................................. 9

    B.  News Corp. and the Post Are Not "Single" or "Joint Employers" ..................... 10

        1.  Centralized Control of Labor Relations................................................. 12

        2.  Interrelation of Operations .................................................................... 15

        3.  Common Management ........................................................................... 17

        4.  Common Ownership or Financial Control .............................................. 19

III. THE CLAIMS AGAINST NEWS CORP. FAIL FOR
    ALL OF THE SAME REASONS THAT THEY FAIL AGAINST THE POST .................. 20

CONCLUSION .............................................................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Arena v. Agip USA Inc.,
  2000 WL 264312 (S.D.N.Y. Mar. 8, 2000) ........................................................................15

Balut v. Loral Elect. Sys.,
  988 F. Supp. 339 (S.D.N.Y. 1997),
  aff'd 166 F.3d 1199 (2d Cir. 1998)...............................................................13, 14, 16

Barbosa v. Continuum Health Partners, Inc.,
  716 F. Supp. 2d 210 (S.D.N.Y. 2010)...........................................................................11

Bragg v. Emmis Broad. Corp.,
  1998 WL 730339 (S.D.N.Y. Oct. 19, 1998) ...........................................................16, 18

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)........................................................................................................8

Clinton's Ditch Coop. Co. v. NLRB,
  778 F.2d 132 (2d Cir. 1985)..........................................................................................11

Contemp. Mission, Inc. v. U.S. Postal Serv.,
  648 F.2d 97 (2d Cir. 1981).............................................................................................9

Da Silva v. Kinsho Intern. Corp.,
  210 F. Supp. 2d 241 (S.D.N.Y.),
  aff'd 229 F.3d 358 (2d Cir. 2000)...........................................................................11, 13

Darden v. DaimlerChrysler N.A. Holding Corp.,
  191 F. Supp. 2d 382 (S.D.N.Y. 2002)...........................................................................10

Dewey v. PTT Telecom Netherlands, U.S., Inc.,
  1995 WL 425005 (S.D.N.Y. July 19, 1995) ..................................................................18

E.E.O.C. v. Grace Episcopal Church of Whitestone, Inc.,
  2007 WL 6831007 (E.D.N.Y. July 3, 2007) ..................................................................14

Ennis v. TYCO Intern. Ltd.,
  2004 WL 548796 (S.D.N.Y. Mar. 18, 2004) .................................................................14

Frank v. U.S. West,
  3 F.3d 1357 (10th Cir. 1993) .........................................................................................14

Fried v. LVI Servs., Inc.,
  2011 WL 2119748 (S.D.N.Y. May 23, 2011) ...........................................................11, 12, 18

Gulino v. New York State Educ. Dept.,
  460 F.3d 361 (2d Cir. 2006)...........................................................................................9, 10

Hammond v. Bloom New York,
  2001 WL 789295 (S.D.N.Y. July 12, 2001) ..........................................................................13

Herman v. Blockbuster Ent. Grp.,
  18 F. Supp. 2d 304 (S.D.N.Y. 1998),
  aff'd 182 F.3d 899 (2d Cir. 1999)..............................................................................15, 16, 18

Houston v. Fidelity,
  1997 WL 97838 (S.D.N.Y. Mar. 6, 1997) ...........................................................................12

Kellett v. Glaxo Enters., Inc.,
  1994 WL 669975 (S.D.N.Y. Nov. 30, 1994) .......................................................................17

Kulak v. City of New York,
  88 F.3d 63 (2d Cir.1996)...................................................................................................9

Meng v. Ipanema Shoe Corp.,
  73 F. Supp. 2d 392 (S.D.N.Y. 1999).............................................................................17, 19

Murray v. Miner,
  74 F.3d 402 (2d Cir. 1996)...........................................................................................11, 12

Powell v. Nat'l Bd. of Med. Exam'rs,
  364 F.3d 79 (2d Cir. 2004)................................................................................................8

Ruhling v. Tribune Co.,
  2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) ...........................................................................15

Sabol v. Cable & Wireless PLC,
  361 F. Supp. 2d 205 (S.D.N.Y. 2005)................................................................................12

Schade v. Coty, Inc.,
  2001 WL 709258 (S.D.N.Y. June 25, 2001) ......................................................................19

Snyder v. Advest, Inc.,
  2008 WL 4571502 (S.D.N.Y. June 8, 2008) ..................................................................14, 15

Strauss v. N.Y. State Dept. of Educ.,
  26 A.D.3d 67 (App. Div. 2005) ..........................................................................................9

Tomka v. Seiler Corp.,
  66 F.3d 1295 (2d Cir. 1995)...............................................................................................9

iii

Velez v. Novartis Pharma. Corp.,
   244 F.R.D. 243 (S.D.N.Y. 2007) .................................................................... *passim*

Voltaire v. Home Servs. Sys., Inc.,
   823 F. Supp. 2d 77 (E.D.N.Y. 2011) ....................................................................11

Wali v. Chelsea Plastics,
   2010 WL 2710763 (S.D.N.Y. June 8, 2010) ...........................................10, 12, 17

Woodell v. United Way of Dutchess Cnty.,
   357 F. Supp. 2d 761 (S.D.N.Y. 2005)..........................................................12, 14

**STATUTES, RULES AND REGULATIONS**

42 U.S.C. § 1981. ....................................................................................... *passim*

42 U.S.C. § 2000e....................................................................................... *passim*

FED. R. CIV. P. 56(C)(2)....................................................................................8

N.Y.C. ADMIN. CODE § 8-107 .................................................................... *passim*

N.Y. EXEC. § 296 ...................................................................................... *passim*

Defendant News Corporation ("News Corp.") submits this memorandum of law in support of its motion for summary judgment dismissing the complaint of plaintiffs Austin Fenner and Ikimulisa Livingston as a matter of law.[1]

## PRELIMINARY STATEMENT

Plaintiff Austin Fenner ("Fenner") was employed by NYP Holdings, Inc. d/b/a the Post (the "Post") from May 2006 through November 2009.  Plaintiff Ikimulisa Livingston ("Livingston") was employed by the Post from 1997 through February 26, 2013.  Fenner and Livingston (together, "Plaintiffs") claim to have experienced discrimination based on their race, African-American, and/or color, black, and/or been retaliated against for complaining about editorial content that ran in the *New York Post* newspaper.  Although neither was ever employed by, compensated by, supervised by, or provided any services to defendant News Corp., or otherwise had their employment affected by any decision made by News Corp., Plaintiffs inexplicably claim that News Corp. should be liable for alleged misconduct.  All claims against News Corp. must be dismissed for the simple reason that News Corp. has never employed Plaintiffs, either actually or constructively, and it therefore cannot be liable for alleged *employment* discrimination as a matter of law.

An essential prerequisite to liability under Title VII, 42 U.S.C. § 1981 ("Section 1981"), and the New York State and City Human Rights Laws (respectively, the "NYSHRL" and "NYCHRL") is that an employer-employee relationship exist between a plaintiff and the defendant corporation.  There is no question that Plaintiffs were employed by the Post and not by News Corp.  Both applied to work for the Post and were hired by Post employees.  The salaries of both were paid solely by the Post.  Both were supervised exclusively by Post employees,

---

[1] Submitted herewith in support of the motion are the affidavits of Amy Scialdone, dated May 7, 2013 ("Scial. Aff."), and Michael Racano, dated May 8, 2013 ("Racano Aff."), as well as the declaration of Mark W. Lerner, dated May 10, 2013 ("Lerner Dec.").

reported on the news solely for the Post, and produced editorial content for only the Post.  The only offices either plaintiff worked from were those of the Post.  The decision to terminate each Plaintiff's employment was made solely by Post employees.  Neither plaintiff alleges harassment by any News Corp. employee.  In short, no employer-employee relationship existed, and no allegation implicates News Corp.

Moreover, no evidence suggests News Corp. and the Post act as a "single" or "joint" employer."  The record makes clear that News Corp. and the Post are factually and legally distinct:  they have separate and autonomous human resources departments and the Post's hiring, firing, setting and paying of salaries, and employee discipline is conducted without News Corp. oversight or influence.  These facts alone are legally dispositive.  They also occupy separate offices and maintain separate finances, and they have separate and distinct employees.  Each company has its own Board of Directors, and corporate formalities are observed.

While Plaintiffs may relish the opportunity to prosecute News Corp. for their own reasons, there is no legally sufficient basis for doing so.  For these and the reasons that follow, all claims against News Corp. must be dismissed.

## STATEMENT OF FACTS

### A.   The Post and News Corp. are Separate Entities

News Corporation is incorporated under Delaware law and owns "hundreds" of companies worldwide.  (Lipp. at 19, 47.)[2]  Its subsidiaries are primarily media companies, and they employ approximately 50,000 to 60,000 individuals globally.  (Id. at 19.)

NYP Holdings, Inc., d/b/a the New York Post, is a wholly owned subsidiary of News America Incorporated ("NAI").  NAI is in turn a subsidiary of News Publishing Australia

---

[2] True and correct copies of referenced excerpts of the deposition of Jordan Lippner, dated February 29, 2012 ("Lipp. at [page]"), are attached to the Lerner Dec. as Exhibit 1.

Holdings Ltd., which is in turn owned by News Corp.  (Id. at 43-44.)  The Post is one of the "hundreds" of subsidiaries indirectly owned by News Corp.  (Id.)

    1.    <u>Labor Relations</u>

The Post and News Corp. do not have centralized labor relations.  Each has its own human resources ("HR") department, and there is no overlap or sharing of employees between these departments.  (Scial. Aff. at ¶ 4.)  Neither News Corp. nor its HR department has authority over the Post's HR department, and the Post makes all hiring, firing, salary, and disciplinary decisions regarding its employees without the involvement of News Corp. or its HR department. (Id. at ¶¶ 6, 9, 10.)  The Post has developed its own performance evaluations and its supervisors are responsible for reviewing employee performance, and no News Corp. employees are involved in the evaluation process.  (Lipp. at 146-47; Scial. at 23-24; Scial. Aff. at ¶ 8.)[3]

The Post has developed numerous employment policies applicable to its employees, including its Code of Conduct, its Travel and Entertainment Expense Policy, its E-mail Policy, and its Cell-Phone Usage Policy.  (Lipp. at 318-19, 326, 330-31, 335-36.)  The Post has also adopted certain general policies prepared by News Corp., such as the Standards of Business Conduct (the "Standards"), which lays out an employee's general legal obligations concerning conflicts of interest and unlawful harassment, but does not dictate discipline for violations or set forth policies governing day-to-day labor relations.  (Id. at 220, 230, 236, 237-38; Lerner Dec., Exh. 3.)  Policies utilized by the Post are distributed by its HR department.  (See, e.g., Lipp. at 215-16, 304.)

The Post is responsible for enforcing *all* policies governing its employees, including investigating possible breaches and disciplining its employees.  (Id. at 230, 238, 359; Scial. Aff.

---

[3] True and correct copies of referenced excerpts of the deposition of Amy Scialdone, dated June 28, 2012 ("Scial. at [page]"), are attached to the Lerner Dec. as Exhibit 2.

at ¶ 10.)  News Corp. has no role in disciplining Post employees, nor does it have the authority to do so.  (Id.)  Employees are trained to direct any complaints to the Post's HR department, a supervisor, an attorney for the Post, or to an anonymous telephone hotline.  (Scial. at 60, 64-66; Jehn at 54, 57.)[4]  The Post's policies do not provide for employees to submit complaints to News Corp.  (Id.)

        2.      <u>Financial and Other Operations</u>

The financial and day-to-day operations of the Post and News Corp. are separate and distinct.  (Lipp. at 379.)  News Corp. and the Post maintain separate financial books and profit and loss statements.  (Racano Aff. at ¶ 5.)  The entities have separate bank accounts.  (Lipp. at 382; Racano Aff. at ¶ 7.)  The Post has its own CFO, Michael Racano, who is a Post employee, and Finance Department, which is comprised entirely of Post employees.  (Racano Aff at ¶ 5.)  Each company is responsible for its own day-to-day expenses; for instance, although both use the same travel agency, each pays the agency separately for its employees' travel (and such expenses are independently approved by the company of the traveling employee).  (Lipp. at 376-77.)

News Corp. and the Post "each had their own offices at 1211 Avenue of the Americas during Plaintiffs employment."  (Id. at 51.)  News Corp. occupies offices on the 4th, 7th and 8th floors of the building located at 1211 Avenue of Americas (the "1211 Building").  (Id. at 51, 57.)  The Post's editorial offices are on the 9th and 10th floors of the 1211 Building, and its HR and finance departments occupied the 15th floor for parts of the relevant time period.  (Id. at 48-50.)  Access to the different offices is possible only by using a company-specific employee identification card.  (Id. at 81.)  The 1211 Building itself is owned by a third-party (id. at 106), is

---

[4] True and correct copies of referenced excerpts of the deposition of Jennifer Jehn, dated June 26, 2012 and February 14, 2013 ("Jehn at [page]"), are attached to the Lerner Dec. as Exhibit 4.

occupied by numerous other companies with no connection to News Corp. or the Post (id. at 80), and the Post pays rent for the floors it occupies.  (Racano Aff. at ¶ 8.)

All other operations of News Corp. and the Post are separate as well.  There are no employees shared between the Post and News Corp.  (Scial. Aff. at ¶ 13.)  News Corp. employees are not, and have not been at any relevant time, involved in the process of printing or distributing the Post's daily newspaper, and the Post has its own Marketing Department responsible for advertising and marketing the *New York Post* newspaper.   (Racano at ¶¶ 3-4.) Likewise, "[t]he New York Post maintains separate and distinct computer databases, [and] computer servers from News Corporation. . . .  Each company has separate IT departments" (Lipp. at 111-12), and both have distinct e-mail address domain names.  (Id. at 108.)  Further, each company maintains a separate security department which does not provide services to the other.  (Id. at 107.)

3.    Management and Board of Directors

None of the Post's senior management is or ever has been an employee of News Corp. Paul Carlucci, the Publisher of the Post during the relevant time period, was its most senior executive responsible for its day-to-day operations (id. at 149-51); he has never been an employee of News Corp.  (See Carl. at 360.)[5]  Col Allan is the highest ranking editor at the Post (Lipp. at 151) and is not an employee of News Corp.  (Allan at 9.)[6]  Jesse Angelo, the Post's Executive Editor, is not and has never been employed by News Corp.  (See Angelo at 29-33 [Day 1].)[7]  Neither the Post's current head of HR, Amy Scialdone, nor its previous head, Jennifer

---

[5] True and correct copies of referenced excerpts of the deposition of Paul Carlucci, dated June 22, 2012 ("Carl. at [page]"), are attached to the Lerner Dec. as Exhibit 5.
[6] True and correct copies of referenced excerpts of the deposition of Col Allan, dated February 14, 2012 and February 21, 2013 ("Allan at [page]"), are attached to the Lerner Dec. as Exhibit 7.
[7] True and correct copies of referenced excerpts of the deposition of Jesse Angelo, dated April 25, 2012 ("Angelo at [page]"), are attached to the Lerner Dec. as Exhibit 6.

Jehn, has ever been employed by News Corp.  (See Scial. at 8, 11-18; Jehn at 14-15, 36-45.)  The

Post's Executive Committee is comprised of the Post's departments heads (Lipp. at 198-99),

including during the relevant time period, Carlucci, Allan, Jehn, Racano, and Scialdone, none of

whom are employed by News Corp.  (Scial. Aff. at ¶ 12.)  The sole attendee who had no position

at the Post was Les Goodstein (id. at 72), who was employed by NAI, a separate company from

News Corp. (id. at 18), pursuant to a written employment contract between him and NAI, and not

News Corp.  (Lern. Dec., Exh. 15.)  Similarly, the Post has a Management Council; no News

Corp. employee sits on this council.  (See Carl. at 320-23.)

Finally, the Post's Board of Directors is comprised of four individuals, including K.

Rupert Murdoch as Chairman and David Devoe.  (Lipp. at 135.)  Murdoch and Devoe also serve

on News Corp.'s Board of Directors, where they are two of sixteen directors.  None of the other

News Corp. directors are Post directors.  (Compare Lerner Dec., Exh. 9, at No. 19, with id., Exh.

10, at No. 19.)  There is no evidence that corporate formalities have ever been ignored between

the two Boards.  Neither Murdoch nor Devoe is an employee of the Post.  (Scial. Aff. at ¶ 14.)

**B.**      **Plaintiffs Were Post Employees, and Not News Corp. Employees**

1.      Fenner's Employment by the Post

Fenner was hired by the Post in or about April 2007.  (See Lerner Dec., Exh. 10.)  He

submitted a job application to the Post (id., Exh. 11), interviewed with Dan Colarusso, then

employed by the Post as its Metro Desk editor (Fenner at 19),[8] met with Amy Scialdone,

employed by the Post as its Vice President of Human Resources ("HR") (id. at 20-21), and

signed an offer of employment with the Post on April 17, 2007 (Lerner Dec., Exh. 10).  During

his employment, Fenner was compensated for his work by the Post and not by News Corp.

---

[8] True and correct copies of referenced excerpts of the deposition of Austin Fenner, dated January 11, 2012 ("Fenner at [page]"), are attached to the Lerner Dec. as Exhibit 12.

(Fenn. at 21.)  In November 2009, Fenner's employment with the Post was terminated; this decision was made solely by Michelle Gotthelf, the Post's Metro Desk Editor, in consultation with Daniel Greenfield, the Post's Deputy Metro Desk editor (Green. at 411)[9]; both are Post employees and neither is a News Corp. employee.  (Gott. at 9, 38-45.)[10]

Fenner never provided services to News Corp.  Rather, Fenner worked as a reporter for the Post, reporting on breaking news and developing stories for publication in the *New York Post* newspaper.  (See Green. at 319; Fenner at 76-78.)  He was first supervised by Colarusso and, subsequently, by Michelle Gotthelf, both Post employees, and at no time was he supervised by a News Corp. employee.  (Scial. Aff. at ¶ 7; Gott. at 9.)  Fenner's annual performance appraisals ("APAs") were prepared by his supervisors and subsequently reviewed by the Post's APA review committee, no members of which are News Corp. employees.  (Scial. Aff. at ¶ 8.)

2.    Livingston's Employment by the Post

Until the termination of her employment on February 26, 2013, Livingston was employed continuously by the Post for more than 15 years:  she applied for employment with the Post on January 28, 1997 (Lerner Dec., Exh. 15) and signed an offer of employment with the Post on February 20, 1997 (id., Exh. 16).  During this time, Livingston has been compensated for her work by the Post, and not by News Corp.  (See Living. at 306; Scial. Aff. at ¶ 9.)[11]  All job-assignment decisions affecting Livingston were made solely by Post employees:  the decision to assign her to the Queens courthouse was made by Angelo and Gotthelf, Post employees (see Angelo at 283-84 [Day 1]), and the subsequent decision to reassign her to field reporting was

---

[9] True and correct copies of referenced excerpts of the deposition of Daniel Greenfield, dated April 5, 2012 ("Green. at [page]"), are attached to the Lerner Dec. as Exhibit 13.

[10] True and correct copies of referenced excerpts of the deposition of Michelle Gotthelf, dated March 29, 2012 ("Gott. at [page]"), are attached to the Lerner Dec. as Exhibit 14.

[11] True and correct copies of referenced excerpts of the deposition of Ikimulisa Livingston, dated January 13, 2012 and February 20, 2013 and February 14, 2013 ("Living. at [page]"), are attached to the Lerner Dec. as Exhibit 17.

likewise made by Gotthelf.  (Gott. at  199.)  No News Corp. employees were involved at any stage of this process.

As a Post employee, Livingston reported on stories solely for the Post's newspaper, and did not provide any services to News Corp.  Livingston was also always supervised by Post employees, most recently Gotthelf and Greenfield, and Zach Haberman prior thereto (Gott. at 79; Scial. Aff. at ¶ 7), a Post editor at that time (see Lerner Dec., Exh. 18), and not any News Corp. employee.  Her APAs were drafted by Post employees, were reviewed by the Post APA review committee, and no News Corp. employee participated in this process.  (Lipp. at 146-47; Scial. Aff. at ¶ 8.)  And, the decision to terminate her employment was made by Angelo alone, the Post's Publisher, who is not a News Corp employee.  (Angelo at 21-22 [Day 2].)

## **ARGUMENT**

## **I.**

## **SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  Summary Judgment is "properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

If a party fails to produce evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then summary judgment is proper.  Id. at 322.  Thus, to defeat summary judgment, the non-moving party "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd.

of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d

1067, 1072 (2d Cir. 1993)).  Mere "conclusory statements, conjecture, or speculation by the

party resisting the motion will not defeat summary judgment."  Kulak v. City of New York, 88

F.3d 63, 71 (2d Cir.1996) (citations omitted).  Thus, the nonmovant's facts "must be material and

of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences,

conjectural, speculative, nor merely suspicions."  Contemp. Mission, Inc. v. U.S. Postal Serv.,

648 F.2d 97, 107 n.14 (2d Cir. 1981) (quotation marks omitted).

## II.

### THE CLAIMS AGAINST NEWS CORP. MUST BE DISMISSED AS IT NEVER EMPLOYED PLAINTIFFS, EITHER IN FACT OR CONSTRUCTIVELY

There is no legal or factual basis for imputing liability to News Corp.  Plaintiffs' claims

against News Corp. must therefore be dismissed.

### A.    Plaintiffs Were Not Employees of News Corp.

Liability under the statutes by which Plaintiffs sue for *employment* discrimination

requires that the Plaintiffs and Defendant have had an employer-employee relationship.  "[T]he

existence of an employer-employee relationship is a primary element of Title VII claims," as

well as under Section 1981, the NYSHRL and NYCHRL.[12]  Gulino v. New York State Educ.

Dept., 460 F.3d 361, 370 (2d Cir. 2006) (citations omitted); Strauss v. N.Y. State Dept. of Educ.,

26 A.D.3d 67, 707 (App. Div. 2005) (NYSHRL and NYCHRL require plaintiff to "demonstrate

that he or she had an employment relationship with the defendant employer").  "[A] prerequisite

to considering whether an individual is [an employee] under common-law agency principles is

---

[12] Although Section 1981, the NYSHRL and NYCHRL provide for individual liability, see 42 U.S.C. § 1981, N.Y. Exec. Law §296(6), N.Y.C. Admin. Code 8-107(6), such arises where an individual participated in the purported *employment* discrimination.  There is no evidence that News Corp. or any of its employees "actually participate[d] in the conduct giving rise to" Plaintiffs' allegations, which is essential to individual liability.  Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 687-88 (S.D.N.Y. 2012).  Thus, Plaintiffs must establish an employer-employee relationship to hold News Corp. liable, which they cannot do.

that the individual have been ***hired*** in the first instance," and, to so determine, the question is "whether [a plaintiff] has received direct or indirect remuneration from the alleged employer." Gulino, 460 F.3d at 372  (citations omitted, emphasis added in Gulino).  "[N]o plausible employment relationship of any sort can be said to exist" without such remuneration.  Id. (citation omitted).

Neither plaintiff was "hired" by News Corp.  Fenner submitted an employment application to the Post, he interviewed with Post employees, he signed an offer letter from the Post, provided services to the Post, and was terminated by Post employees in November 2009. (See Facts, § B.1, supra.)  Livingston also applied to work for the Post, signed an offer of employment from the Post, and provided services to the Post and not News Corp. from 1997 her employment was terminated by a Post employee.  (Id. at § B.2.)  Neither plaintiff "received direct or indirect remuneration from [News Corp.]," Gulino, 460 F.3d at 372, but rather both were paid directly by the Post and the Post alone.  (See Scial. Aff. at ¶ 9; Fenn. at 20-21; Living. at 309.)

Plaintiffs simply cannot demonstrate this basic threshold element of an employer-employee relationship with News Corp. and their claims must be dismissed.

**B.**    **News Corp. and the Post Are Not "Single" or "Joint Employers"**

As Plaintiffs cannot show an actual employer-employee relationship, they must demonstrate that News Corp. and the Post are constructively a "single" or "joint employer" to hold News Corp. liable.  This they cannot do.

 "[A]s a matter of policy, courts presume the separateness of legally distinct corporate entities."  Darden v. DaimlerChrysler N.A. Holding Corp., 191 F. Supp. 2d 382, 395 (S.D.N.Y. 2002).  See also Wali v. Chelsea Plastics, 2010 WL 2710763, at *4 (S.D.N.Y. June 8, 2010) ("Courts do not readily find that related entities are single employers.") (quoting Kellett v. Glaxo

Enters., Inc., 1994 WL 669975, at *2 (S.D.N.Y. Nov. 30, 1994)).  This is because "a parent company should not lightly be held responsible for the acts of its subsidiaries absent proof that the parent was involved in the particular circumstances giving rise to the litigation."  Da Silva v. Kinsho Intern. Corp., 210 F. Supp. 2d 241, 244 (S.D.N.Y.), aff'd 229 F.3d 358 (2d Cir. 2000).

However, in limited circumstances, a non-employer may be liable under the "single employer" doctrine "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'"  Clinton's Ditch Co-op. Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985) (quoting NLRB v. Browning-Ferris Indus. of Penn., Inc., 691 F.2d 1117, 1122 (3d Cir. 1982)).[13]  To do this, the Second Circuit requires a plaintiff to show four factors:  "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Velez v. Novartis Pharma. Corp., 244 F.R.D. 243, 250 (S.D.N.Y. 2007) (quoting Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995)).

A "single employer" is found "*only under extraordinary circumstances*."  Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (emphasis added).  Plaintiffs cannot carry the high burden to show such "extraordinary circumstances" exist and thus present no basis to hold News Corp. liable for the purported misconduct.[14]

---

[13] The single employer analysis applies to claims under Title VII as well as § 1981, the NYSHRL and the NYCHRL.  See Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2010) (single and joint employer doctrines "apply under both Section 1981 and the local New York anti-discrimination statutes"); Voltaire v. Home Servs. Sys., Inc., 823 F. Supp. 2d 77, 96 (E.D.N.Y. 2011).

[14] Although the Second Circuit also recognizes a "joint employer" theory of liability as well, this is not relevant to the present litigation.  Such "applies where . . . two employers handle certain aspects of their employer-employee relationship jointly," Fowler, 677 F. Supp. 2d at 681 (quotations omitted), such as with "temporary employment or staffing agencies and their client entities" and "contractors and subcontractors . . . ."  Fried v. LVI Servs., Inc., 2011 WL 2119748, at *6 (S.D.N.Y. May 23, 2011) (quoting Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), aff'd, 375 Fed. Appx. 54 (2d Cir. 2010)).  In any event, the joint employer analysis tracks the single employer analysis and, as such, Plaintiffs' claims fail for the same reasons as under a single employer theory.  See, e.g., Velez, 244 F.R.D. at 250 (using same analysis for "joint" and "single" employer doctrines).  Further, a joint employer may not be held liable for discriminatory conduct if "there is no evidence that [the joint employer] either knew or should

1.      Centralized Control of Labor Relations.

The "crucial element of the [single employer] inquiry" is "centralized control of labor relations." Velez, 244 F.R.D. at 250 (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000)); see also Sabol v. Cable & Wireless PLC, 361 F. Supp. 2d 205, 208 (S.D.N.Y. 2005) ("[C]entralized control of labor relations – is the focus of the inquiry.").

This issue "has been distilled to a critical question:  what entity made the final decision regarding employment matters related to the person claiming discrimination?"  Velez, 244 F.R.D. at 250 (quoting Regan v. In the Heat of the Nite, Inc., 1995 WL 413249 (S.D.N.Y. July 12, 1995)).  See also Murray v. Miner, 74 F.3d 402, 405 (2d Cir. 1996) (The single employer doctrine "is most implicated where one entity actually had control over the labor relations of the other entity, and, thus, bears direct responsibility for the alleged wrong.") (citation omitted).  In the present matter, the answer is plain:  all relevant employment decisions were made by the Post, not News Corp., and no News Corp. employee is so much as implicated in any misconduct.

"To establish that [a parent company] had centralized control over [a subsidiary's] labor relations, plaintiff must submit evidence that the [parent] had actual day-to-day control over the [subsidiary's] employment decisions."  Woodell v. United Way of Dutchess Cnty., 357 F. Supp. 2d 761, 769 (S.D.N.Y. 2005).  Factors considered include "whether each company has a separate human resource department" and makes independent "hiring, discipline, and termination" decisions, Wali, 2010 WL 2710763, at *3 (internal citations and quotations omitted); whether the parent has "authority . . . to supervise [the plaintiff's] work" or set "her rate . . . of pay," Houston v. Fidelity, 1997 WL 97838, at *12 (S.D.N.Y. Mar. 6, 1997); and whether the subsidiary independently "handl[es] job applications, approv[es] personnel status reports, and exercise[es]

---

have known about any of the alleged discrimination."  Fried, 2011 WL 2119748, at *7 (quoting Lima, Fed. Appx. at 55).  There is no evidence of such notice here.

veto power over major employment decisions." <u>Velez</u>, 244 F.R.D. at 250-51 (quoting <u>Parker</u>, 204 F.3d at 341).  A failure to demonstrate such factors is fatal to establishing a single employer relationship.[15]

Here, all facts and evidence show there are no centralized labor relations.  News Corp. and the Post have separate and independent HR departments, with separate offices and unique employees.  (<u>See</u> Facts, § A.1.)  The companies do not "make joint hiring or firing decisions": Post employees are hired by the Post, are paid by the Post, their employment is terminated by the Post, and News Corp. and/or its employees do not have the power to hire, fire or compensate Post employees.  (<u>Id.</u>)  As noted above, both Plaintiffs applied to work at the Post, signed offers of employment with the Post, and the decision to terminate their employment was made by Post employees, and no News Corp. employees were involved in this process.  (<u>See</u>  Facts, § B, <u>supra</u>.)  And both were at all times compensated by the Post, and not News Corp.  (<u>Id.</u>)

Similarly, applications for employment with the Post are handled by the Post's HR department and/or the relevant Post manager, and not by News Corp.  (Scial. Aff. at ¶ 6.)  The Post sets the salaries of its employees without intervention by News Corp.  (<u>See</u> <u>id.</u> at ¶ 9.)  The Post also has an annual performance evaluation program applicable to its employees alone; evaluations are prepared by Post supervisors, are reviewed by a committee of Post managers, and records of evaluations are maintained by the Post's HR department; no News Corp. employees are involved in this process. (Lipp. at 146-47; Scial. Aff. at  ¶ 8.)

---

[15] <u>See, e.g.</u>, <u>Da Silva</u>, 210 F. Supp. 2d at 244 (no single employer where subsidiary did not request permission from parent prior to terminate employment); <u>Hammond v. Bloom New York</u>, 2001 WL 789295 (S.D.N.Y. July 12, 2001) (no single employer where subsidiary made employment decisions, including hiring and firing, and there was no centralized control of labor relations); <u>Balut v. Loral Elect. Sys.</u>, 988 F. Supp. 339, 346-47 (S.D.N.Y. 1997), <u>aff'd</u> 166 F.3d 1199 (2d Cir. 1998) (no interrelated labor relations where plaintiff failed to show that parent company "hired, transferred, reviewed or fired him," performance evaluations were signed by subsidiary supervisor on subsidiary forms, and where subsidiary's human resources director worked for subsidiary alone, and handled its personnel functions).

The Post also adopts and creates its own employment policies.  It created and implemented a Code of Conduct, a Travel and Entertainment Expense Policy, an E-mail Policy, and a Cell-Phone Usage Policy.  (Lipp. at 318-19, 330-31, 335-36.)  In addition, it has adopted policies of affiliated companies, such as NAI and News Corp., including the Standards, prepared by News Corp.  (Id. at 230, 328, 359, 344-45.)  "It is not surprising that [the Post] . . . would use policies adopted by [News Corp.], a much larger affiliated corporation, as a model," Velez, 244 F.R.D. at 252,[16] but this does not evidence "centralized labor control."  Id.[17]  What is relevant is control over communication and enforcement of policies, all of which reside with the Post, including adopted policies; for instance, the Post enforces all applicable policies, and determines the appropriate discipline in the discretion of the applicable Post manager and/or HR employee without involvement by News Corp.  (Lipp. at 318-19, 330-31, 335-36; Scial. Aff. at ¶ 10.) (Notably, no adopted policy mandates specific discipline for a violation of such policy.  [See, e.g., Lerner Dec., Exh. 3.])  Likewise, Post employees are instructed to raise complaints of

---

[16] The Standards are highly general guidelines and do not govern day-to-day operations at the Post.  (See Lerner Dec., Exh. 3.)  The Standards set forth general policies, such as anti-discrimination policies and ethical guidelines. They do not provide set out policies regarding the payment of wages, the discipline of employees, hiring and firing criteria, or other labor relations matters.

[17] See also Snyder v. Advest, Inc., 2008 WL 4571502, at *6 (S.D.N.Y. June 8, 2008) (finding fact that parent supplied policies to subsidiary "does not indicate that [the parent] exercised control over or made final decisions regarding the employment of" the subsidiary's employees) (quoting Ennis v. TYCO Intern. Ltd., 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004)); E.E.O.C. v. Grace Episcopal Church of Whitestone, Inc., 2007 WL 6831007 (E.D.N.Y. July 3, 2007) (although parent-Diocese "played a role in developing and maintaining a sexual harassment policy" for subsidiary churches, this did "not mean the Diocese controlled employment matters at [subsidiary defendant], let alone the terms of [plaintiff's] employment"); Ennis, 2004 WL 548796, at *4 (plaintiff's acceptance of parent-company's employee manual "does not indicate that [the parent] exercised control over or made final decisions regarding the employment of the plaintiff] or anyone else"); Woodell, 357 F.Supp.2d at 769 (that parent provides "general policy statements or guidelines on employment matters" to the subsidiary, among other things, "is not sufficient evidence to establish centralized control"); Balut, 988 F. Supp. at 347 ("[a] parent's broad general policy statements regarding employment . . . are not enough" to establish joint labor relations) (quoting Frank v. U.S. West, 3 F.3d 1357, 1363 (10th Cir. 1993)); Frank, 3 F.3d at 1361-62 (policies created by parent but supplied to subsidiaries do not support a "single employer" where the subsidiary implements and enforces these policies).

discrimination or other policy violations to the Post's HR department, their supervisor, or a

lawyer for the Post, and not to that of News Corp.[18]  (Scial. at 60, 64-66; Jehn at 54, 57.)

News Corp. does not maintain "day-to-day" control over the Post's labor relations – or

any control whatsoever – and Plaintiffs thus cannot establish this "crucial" element of the "single

employer" doctrine.

 2. <u>Interrelation of Operations</u>

Plaintiffs cannot carry their burden to show that News Corp. and the Post have

interrelated operations.  To show this, courts look to the following factors:

> (1) whether the parent was involved directly in the subsidiary's
> daily decisions relating to production, distribution, marketing, and
> advertising; (2) whether the two entities shared employees,
> services, records, and equipment; (3) whether the entities
> commingled bank accounts, accounts receivable, inventories, and
> credit lines; (4) whether the parent maintained the subsidiary's
> books; (5) whether the parent issued the subsidiary's paychecks;
> and (6) whether the parent prepared and filed the subsidiary's tax
> returns.

<u>Herman v. Blockbuster Ent. Grp.</u>, 18 F. Supp. 2d 304, 309 (S.D.N.Y. 1998), <u>aff'd</u> 182 F.3d 899

(2d Cir. 1999).[19]  Where the record does not indicate that a parent exhibits "day-to-day" control

over a subsidiary, <u>Arena v. Agip USA Inc.</u>, 2000 WL 264312, at *3 (S.D.N.Y. Mar. 8, 2000), a

plaintiff cannot show interrelated operations and courts will dismiss "single employer" claims as

---

[18] Of course, even if the Post's policies permitted employees to raise complaints to News Corp.'s HR department, this alone fails to evidence the requisite control over day-to-day labor relations necessary to establish a single employer relationship.  <u>See</u> <u>Ruhling v. Tribune Co.</u>, 2007 WL 28283, at *6 (E.D.N.Y. Jan. 3, 2007).

[19] <u>See</u> <u>also</u> <u>Herman</u>, 18 F. Supp. 2d at 309 (looking to "the commingling of funds and assets, the use of the same work force and business offices for both corporations, and the severe undercapitalization of the subsidiary") (quoting <u>Johnson v. Flowers Indus., Inc.</u>, 814 F.2d 978, 981-82 (4th Cir. 1987)).  <u>See also</u> <u>Velez</u>, 244 F.R.D. at 252 (looking to "decision-making relating to production, distribution and marketing, shared resources, commingled bank accounts, and whether one issues the paycheck for the others, among other things"; <u>Snyder</u>, 2008 WL 4571502, at *6 ("Shared records, bank accounts, credit lines, and office space . . . are probative of interrelated operations.") (quoting <u>Lenoble v. Best Temps, Inc.</u>, 352 F.Supp.2d 237, 244 (D. Conn. 2005)).

a matter of course.[20]  The record is clear that the Post and News Corp. do not have interrelated operations.

News Corp. is not involved in the Post's "daily decisions relating to production, distribution, marketing, and advertising."  Herman, 18 F. Supp. 2d at 309.  Initially, no News Corp. employee heads any Post department.  (Scial. Aff. at ¶12.) The Post's publisher – the highest ranking executive at the Post – is not a News Corp. employee, and neither is its editor-in-chief, the highest ranking editor, nor the Post's CFO, Racano.  (Facts, § A.1.)  Similarly, the Post has a Management Council; no News Corp. employee sits on this council.  (Id.)  The Post also has an Executive Committee, on which no News Corp. employee serves, and the only attendee without a position at the Post is employed by NAI, and not News Corp., and attends because he runs other New York-area newspapers, and not to make Post management decisions.  (Id.)  Further, the Post maintains its own staff of employees separate from News Corp. (Scial. Aff. at ¶ 13), and there is no evidence of the two sharing employees.  Herman, 18 F. Supp. 2d at 309.

Further, the Post and News Corp. have separate finances (Lipp. at 379; Racano Aff. at ¶ 7), have separate bank accounts (id. at 382), and they maintain separate financial books, and profit and loss statements (Racano Aff. at ¶ 5).  The Post has its own finance department, headed by its own CFO, responsible for overseeing the Post's finances; no members of the Post's

---

[20] See, e.g., Herman, 18 F. Supp. 2d at 309 (no interrelated operations where parent performed "management services" for subsidiary, including payroll processing, insurance claim processing, preparation of tax returns, and computer operation work," permitted a one-time transfer of employees from the parent to the subsidiary, and the parent guaranteed a loan for the subsidiary, among other things); Bragg v. Emmis Broad. Corp., 1998 WL 730339, at *7 (S.D.N.Y. Oct. 19, 1998) (consolidation of subsidiaries by parent to trim budget, as well as selection of formats for these radio stations, does not evidence common management between parent and subsidiaries as this does not concern day-to-day operations); Balut, 988 F. Supp. 339 (finding parent's bi-annual review of subsidiary's finances and large contracting bids, or the annual transfer of employees from one company to the other, did not implicate interrelated operations).

16

finance department are News Corp. employees.  (Id. at ¶¶ 1, 5.)  And the Post compensates and issues paychecks to its employees, not News Corp.  (Id. at ¶ 6; Scial. at ¶9.)[21]

News Corp. is not involved in the Post's production operations, such as printing or distributing the Post's daily newspaper.  (Id. at ¶ 4.)  The Post also is responsible for advertising its product, *The New York Post* newspaper.  (Id. at ¶ 3.)  And the companies maintain separate IT departments, computer servers, and domain names, and separate security departments.  (Lipp. at 107-08, 111-12.)

Finally, the Post and News Corp. do not share office space or other facilities.  Although both maintain *separate* offices in the 1211 Building, they are two of many companies in that building; their offices are located on different floors; company-specific identification cards are necessary to access each company's offices; and each pays its own rent to a third-party.  (See Lipp. at 48-50, 51, 57, 80-81, 106, Racano. Aff. at ¶ 9.)[22]

In sum, Plaintiffs cannot show that the Post and News Corp. have interrelated operations.

3.  Common Management

This prong, significantly "less important" than the previous two, is insufficient, even if demonstrated, "to justify treating a parent corporation and its subsidiary as a single employer."

---

[21] The Post shares a benefit plan with NAI and other subsidiaries of NAI.  (Lipp. at 388-91.)  This is irrelevant to the present matter (i) because common benefit plans between a parent and subsidiary do not evidence interrelated operations, see Meng v. Ipanema Shoe Corp., 73 F. Supp. 2d 392, 405 (S.D.N.Y. 1999) (common benefits plans between parent and subsidiary "speaks only to economies of scale . . . and not to centralized control of labor relations") (quoting Kellett v. Glaxo Enters., Inc., 1994 WL 669975, at *5 (S.D.N.Y. Nov. 30, 1994)); and (ii) NAI and News Corp. are separate companies, and "[a] plaintiff . . . may not rely on the totality of relationships between the various subsidiaries of a common parent" to establish a single employer relationship with that parent.  Kellett, 1994 WL 669975, at *5 (citing Frank, 3 F.3d at 1362).

[22] Plaintiffs will presumably argue that 3rd floor conference rooms and a cafeteria evidence shared office spaces. This is incorrect.  There is no evidence as to what company – either the Post or News Corp. or a third-party – controls the 3rd floor or the facilities on this floor.  Although employees from the Post and News Corp. may use these facilities, the 3rd floor cafeteria is open to employees of any other company in the building.  (Lipp. at 80.)  In any event, a shared space does not demonstrate interrelated operations.  See Velez, 244 F.R.D. at 253 (sharing of office space, free of charge, did not demonstrate interrelated operations); Wali, 2010 WL 2710763, at *5 (no interrelated operations despite sharing of loading dock).

Velez, 244 F.R.D. at 253-54 (quoting Meng v. Ipanema Shoe Corp., 73 F. Supp. 2d 392, 403 (S.D.N.Y. 1999)).  This principle notwithstanding, News Corp. and the Post do not have common management.

First, no senior executive or employee of the Post has held a position with News Corp.; by way of example, no member of the Executive Committee is a News Corp. employee (Facts, § 1.C), nor are any of the Post's department heads employed by News Corp.  (Scial. Aff. at ¶ 12.)

Second, with regard to the Post's Board of Directors, although two members also sit on News Corp.'s Board, this does not establish "common management" as "directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership."  Herman, 18 F. Supp. 2d at 312 (quoting Lusk v. Fozmeyer Health Grp., 129 F.3d 773, 779 (5th Cir. 1997)).  A plaintiff "need[s] to prove more than an overlap in boards or management in order to use the single employer doctrine," Dewey v. PTT Telecom Netherlands, U.S., Inc., 1995 WL 425005, at *3 (S.D.N.Y. July 19, 1995), because "the overlap of even a majority of board members . . . does not show that the parent 'exercises control over the day-to-day operations' of the subsidiary."  Bragg, 1998 WL 730339, at *7 (citing Dewey, 1995 WL 425005, at *2).  To do so, a plaintiff must produce evidence that the parent company's management "exercised control over the operations and employment practices" of the subsidiary to overcome the "presumption" that directors and officers "change hats."  Fried v. LV Servs., Inc., 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011) (quoting U.S. v. Bestfoods, 524 U.S. 51, 69 (1998)).

The "overlap" of two Board members has not resulted in common management, nor is there evidence that either common Board member acted on News Corp.'s behalf in making any Board decisions for the Post.  Id.  And there is no evidence that the common Board members are

involved in personnel or financial decisions, including those relating to Plaintiffs, who thus have failed to show this element in support of a "single employer" theory.

       4.    <u>Common Ownership or Financial Control</u>

      Much like common management, "common ownership or financial control" is "less important" than centralized labor relations and interrelation of operations.  <u>Velez</u>, 244 F.R.D. at 253-54.  "A parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability."  <u>Meng</u>, 73 F. Supp. 2d at 403 (citation omitted).  The mere fact that a parent corporation possesses a "controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership . . . without forfeiting the protection of limited liability."  <u>Velez</u>, 244 F.R.D. at 254 (quoting <u>Meng</u>, 73 F. Supp. 2d at 403).  "[T]his factor alone is insufficient to support an integrated enterprise theory of liability."  <u>Id.</u> at 254.

      Although News Corp. ultimately owns the Post by virtue of its ownership of the Post's parent company (thus putting it three levels above the Post), there is no daily financial control. As noted above, the Post maintains independent finances including, among other things, bank accounts, expenses, profit and loss statements, and taxes.  (<u>See</u>, Facts, § A.2, <u>supra</u>.)  "[I]n the absence of any meaningful participation" by [News Corp.] in [the Post's] employment and labor decisions, [News Corp.'s] ownership status with respect to [the Post] is insufficient to consider the entities an integrated single employer . . . ."  <u>Schade v. Coty, Inc.</u>, 2001 WL 709258, at *9 (S.D.N.Y. June 25, 2001).  There is no evidence of such "meaningful participation."

### III.

### THE CLAIMS AGAINST NEWS CORP. FAIL FOR ALL OF THE SAME REASONS THAT THEY FAIL AGAINST THE POST

As set forth in the Memorandum of Law in Support of Defendants NYP Holdings, Inc., d/b/a the New York Post, Michelle Gotthelf and Daniel Greenfield's Motion for Summary Judgment, also submitted in this matter and dated May 10, 2013, Plaintiffs have failed to demonstrate that they were subject to any unlawful discrimination and/or retaliation on the basis of the race and/or color, or that they suffered unlawful retaliation.  For all of the reasons set forth in that brief, adopted and incorporated by reference herein, Plaintiffs' claims against News Corp. fail as well, and all such claims must be dismissed as against News Corp.

* * *

As Plaintiffs cannot show that the Post and News Corp. are a single employer, they present no basis to impute liability on News Corp. and all claims against it must be dismissed.

20

## **CONCLUSION**

Based on the foregoing, Defendant News Corporation respectfully requests that this

Court grant summary judgment dismissing with prejudice Plaintiffs Fenner and Livingston's

Amended Complaint in its entirety.

Dated: May 10, 2013
   New York, New York

          Respectfully submitted,

          KASOWITZ, BENSON, TORRES
           & FRIEDMAN LLP

          By: /s/ Mark W. Lerner
            Marc E. Kasowitz (mkasowitz@kasowitz.com)
            Mark W. Lerner (mlerner@kasowitz.com)
            Blythe E. Lovinger (blovinger@kasowitz.com)
            Garrett D. Kennedy (gkennedy@kasowitz.com)

          1633 Broadway
          New York, New York 10019
          Tel.: (212) 506-1700
          Fax: (212) 506-1800

          Attorneys for Defendant
          News Corporation

21