KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
Garrett D. Kennedy (gkennedy@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700

*Attorneys for Defendant*
News Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                :
AUSTIN FENNER and                                               :
IKIMULISA LIVINGSTON,                                           :
                                                                :
                              Plaintiffs,   :   Civil No. 09 CV 9832 (LGS)
                                                                :
              vs.                                               :
                                                                :
NEWS CORPORATION, NYP HOLDINGS,                                 :
INC., d/b/a THE NEW YORK POST,                                  :
MICHELLE GOTTHELF and, DANIEL                                   :
GREENFIELD, in their official and individual                    :
capacities,                                                     :
                                                                :
                              Defendants.   :
---------------------------------------------------------------x

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, News Corporation ("News Corp." or "Defendant"), by its attorneys Kasowitz, Benson, Torres & Friedman LLP, respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against Plaintiffs Austin Fenner ("Fenner") and Ikimulisa Livingston ("Livingston") (together "Plaintiffs").

A.  **News Corp. and the New York Post Are Separate Entities**

1. News Corporation is incorporated under Delaware law and owns "hundreds" of companies worldwide. (Lipp. at 19, 47.)[1]  Its subsidiaries are primarily media companies, and they employ approximately 50,000 to 60,000 individuals globally. (Id. at 19.)

2. NYP Holdings, Inc., d/b/a the New York Post (the "Post"), is a wholly owned subsidiary of News America Incorporated ("NAI"), which in turn is a subsidiary of News Publishing Australia Holdings Ltd., which is in turn owned by News Corp. (Id. at 43-44.)  The Post is one of the "hundreds" of subsidiaries indirectly owned by News Corp. (Id.)

B.  **News Corp. and the Post Have Separate Labor Relations**

3. The Post and News Corp. each has its own human resources ("HR") department, and there is no overlap or sharing of employees between these departments. (Scial. Aff. at ¶ 4.)[2]

4. Neither News Corp. nor its HR department has authority over the Post's HR department, and the Post makes all hiring, firing, salary, and disciplinary decisions regarding its employees without the involvement of News Corp. or its HR department. (Id. at ¶¶ 6, 9, 10.)

5. Applications for employment with the Post are and have been at all relevant times handled by the Post's HR department and/or the relevant Post manager, and not by News Corp. (Id. at ¶ 6.)

6. The Post has developed its own performance evaluations and its supervisors are responsible for reviewing employee performance; the evaluations are reviewed by a committee of Post managers and records of evaluations are maintained by the Post's HR department.

---

[1] True and correct copies of referenced excerpts of the deposition of Jordan Lippner, dated February 29, 2012, designated "Lipp. at [page]," are attached to the accompanying Declaration of Mark W. Lerner (the "Lerner Declaration" or "Lern. Dec."), dated May 10, 2013, as Exhibit 1. All other exhibits referenced herein, unless otherwise specified, are attached to the Lerner Declaration.
[2] The affidavit of Amy Scialdone, dated May 7, 2013, submitted in support of Defendant News Corp.'s motion for summary judgment, is herein designated "Scial. Aff."

2

(Lipp. at 146-47; Scial. at 23-24; Scial. Aff. at ¶ 8.)[3]  No News Corp. employees are involved in this process.  (Scial. Aff. at ¶ 8.)

7. The Post sets and has set at all relevant times the salaries of its employees without intervention by News Corp.  (See id. at ¶ 9.)

8. The Post also has developed numerous policies applicable to its employees, including its Code of Conduct, its Travel and Entertainment Expense Policy, its E-mail Policy, and its Cell-Phone Usage Policy.  (Id. at 318-19, 326, 330-31, 335-36.)

9. The Post has also adopted certain general policies prepared by News Corp., such as the Standards of Business Conduct (the "Standards"), which lays out an employee's general legal obligations with regards to conflicts of interest and unlawful harassment, but does not dictate discipline for violations or set forth policies governing day-to-day labor relations.  (Id. at 220, 236, 237-38; Lerner Dec., Exh. 3.)

10. The Post is, and has been at all relevant times, responsible for enforcing all policies governing its employees, including investigating possible breaches and disciplining its employees.  (Id. at 230, 238, 359; Scial. Aff. at ¶ 10.)  News Corp. has no role in disciplining Post employees, nor does it have the authority to do so.  (Id.)

11. Policies utilized by the Post are distributed by the Post's HR department.  (See, e.g., Lipp. at 215, 304.)

12. Employees are, and have been at all relevant times, trained to direct any complaints to the Post's HR department, a supervisor, an attorney for the Post, or to an

---

[3] True and correct copies of relevant excerpts of the deposition transcript of Amy Scialdone, dated June 28, 2012 and April 16, 2013, designated "Scial. at [page]," are attached to the Lerner Declaration as Exhibit 2.

3

anonymous telephone hotline. (Scial. at 60, 64-66; Jehn at 54, 57.)[4] The Post's policies do not provide for employees to submit complaints to News Corp. (Id.)

13. The Post shares a benefit plan with NAI but not with News Corp. (Lipp. at 388-91.)

C. **News Corp. and the Post Have Separate Operations**

14. There are no employees shared between the Post and News Corp. (Scial. Aff. at ¶ 13.)

15. The financial and day-to-day operations of the Post and News Corp. are, and have been at all relevant times, separate and distinct. (Lipp. at 379.)

16. The Post maintains, and has maintained at all relevant times, its own separate financial books and records, including profit and loss statements. (Racano Aff. at ¶ 5.)[5]

17. The Post has its own CFO, Michael Racano, who is a Post employee, and Finance Department, which is comprised entirely of Post employees. (Racano Aff at ¶ 1, 5.)

18. News Corp. and the Post have separate bank accounts. (Lipp. at 382.)

19. No members of the Post's finance department are, or have been at any relevant time, News Corp. employees. (Id. at ¶ 5.)

20. Each of News Corp. and the Post is, and has been at all relevant times, responsible for its own day-to-day expenses; for instance, although both use the same travel agency, each pays that agency separately for its employees' travel, and such expenses are independently approved by the company of the traveling employee. (Lipp. at 376-77.)

---

[4] True and correct copies of relevant excerpts of the deposition transcript of Jennifer Jehn, dated June 26, 2012 and February 14, 2013, designated "Jehn at [page]," are attached to the Lerner Declaration as Exhibit 4.
[5] The affidavit of Michael Racano, dated May 8, 2013, submitted in support of Defendant News Corp.'s motion for summary judgment, is herein designated "Racano Aff."

4

21. Likewise, the two companies "each had their own offices at 1211 Avenue of Americas" during the relevant time period: News Corp. occupies offices on the 4th, 7th and 8th floors of the building located at 1211 Avenue of Americas (the "1211 Building"), while the Post's editorial offices are on the 9th and 10th floors of the 1211 Building, and its HR and finance departments occupied the 15th floor for parts of the relevant time period. (Id. at 48-51, 57.)

22. Access to the different offices is possible only by using a company-specific employee identification card. (Id. at 81.)

23. The 1211 Building itself is owned by a third-party (id. at 106), is occupied by numerous other companies with no connection to News Corp. or the Post (id. at 80), and the Post is charged rent for the floors it occupies (Racano Aff. at ¶ 9.)

24. News Corp. employees are not, and have not been at any relevant time, involved in the process of printing or distributing the Post's daily newspaper. (Id. at ¶¶ 3-4.)

25. The Post also has its own marketing department responsible for advertising and marketing the *New York Post* newspaper. (Id. at ¶ 4.)

26. News Corp. and the Post, now and at all relevant times, "maintain[] separate and distinct computer databases, [and] computer servers" and "[e]ach company has separate IT departments." (Lipp. at 111-12.) Further, both companies have distinct e-mail address domain names. (Id. at 108.)

27. Both companies maintain separate security departments which do not provide services to the other. (Id. at 107.)

D. **News Corp. and the Post Do Not Have Common Management**

28. None of the Post's senior management is or ever has been an employee of News Corp.

29. Paul Carlucci, the Publisher of the Post during the relevant time period, was its most senior executive responsible for its day-to-day operations (id. at 149-51); he has never been an employee of News Corp. (See Carl. at 360.)[6]

30. Jesse Angelo, the Post's present Publisher, is not and has never been employed by News Corp. (See Angelo at 15 [Day 2].)[7]

31. Col Allan is the highest ranking editor at the Post (Lipp. at 151); he has never been an employee of News Corp. (See Allan at 9.)[8]

32. Neither the Post's current head of HR, Amy Scialdone, nor its previous head, Jennifer Jehn, has ever been employed by News Corp. (See Scial. at 8, 11-18; Jehn at 14-15, 36-45.)

33. The Post's Executive Committee is comprised of the Post's department heads (Lipp. at 198-99), including during the relevant time period, Carlucci, Allan, Jehn, Racano, and Scialdone, none of whom are employed by News Corp. (Scial. Aff. at ¶ 12.)

34. Les Goodstein is an employee of NAI, and entered into a contract for employment with NAI, and not News Corp. (Lern. Dec., Exh. 19.)

35. NAI is a separate company from News Corp. (Id. at 18.)

36. The Post has a Management Council that no News Corp. employee sits on. (See Carl. at 320-23.)

---

[6] True and correct copies of relevant excerpts of the deposition transcript of Paul Carlucci, dated June 22, 2012, designated "Carl. at [page]," are attached to the Lerner Declaration as Exhibit 5.
[7] True and correct copies of referenced excerpts of the deposition of Jesse Angelo, dated April 25, 2012 and April 5, 2013 ("Angelo at [page]"), are attached to the Lern. Dec. as Exhibit 6.
[8] True and correct copies of referenced excerpts of the deposition of Col Allan, dated February 14, 2012 and February 21, 2013 ("Allan at [page] [Day 1 or Day 2]"), are attached to the Lern. Dec. as Exhibit 7.

37. News Corp.'s Board is comprised of sixteen individuals, only two of whom, K. Rupert Murdoch and David Devoe, also sit on the Post's Board of Directors. (Compare Lern. Dec., Exh. 8, at No. 19, with Lern. Dec., Exh. 9, at No. 19.)

38. Neither of K. Rupert Murdoch or David Devoe is employed by the Post. (Scial. Aff. at ¶ 14.)

E.  **Fenner was a Post Employee, and Not a News Corp. Employee**

39. Fenner was hired by the Post in or about April 2007. (See Lern. Dec., Exh. 10.)

40. Fenner submitted a job application to the Post (id., Exh. 11), interviewed with Daniel Colarusso, then employed by the Post as its Metro Desk editor (Fenner at 19)[9], met with Amy Scialdone, employed by the Post as its Vice President of HR (id. at 20-21), and signed an offer of employment with the Post on April 17, 2007 (Lern. Dec., Exh. 10).

41. While employed, Fenner was always compensated by the Post and not by News Corp. (Fenner at 21; Scial. Aff. at ¶ 9.)

42. During his employment with the Post, Fenner worked as a senior reporter, reporting on breaking news and developing stories for publication in the *New York Post* newspaper. (See Green. at 319; Fenner at 76-78.)[10] He did not provide any services to News Corp.

43. Fenner was supervised by Colarusso and, subsequently, by Michelle Gotthelf, both Post employees. (Scial. Aff. at ¶ 7; Gott. at 9.)[11]

---

[9] True and correct copies of referenced excerpts of the deposition of Austin Fenner, dated January 11, 2012 ("Fenner at [page]"), are attached to the Lern. Dec. as Exhibit 12.
[10] True and correct copies of referenced excerpts of the deposition of Daniel Greenfield, dated April 5, 2012 ("Green. at [page]"), are attached to the Lern. Dec. as Exhibit 13.
[11] True and correct copies of referenced excerpts of the deposition of Michelle Gotthelf, dated March 29, 2012 ("Gott. at [page]"), are attached to the Lern. Dec. as Exhibit 14.

44. Fenner's annual performance appraisals ("APAs") were prepared by his supervisors and subsequently reviewed by the Post's APA review committee, no members of which are News Corp. employees. (Scial. Aff. at ¶ 8.)

45. In November 2009, Fenner's employment with the Post was terminated; this decision was made by Gotthelf in consultation with Daniel Greenfield, the Deputy Metro Desk editor (Green. at 411), neither of whom is a News Corp. employee (Gott. at 9; Scial. Aff. at ¶ 7).

F. **Livingston was a Post Employee, and Not a News Corp. Employee**

46. Livingston applied for employment with the Post on January 28, 1997 (Lern. Dec., Exh. 15) and signed an offer of employment with the Post on February 20, 1997 (id., Exh. 16).

47. Livingston was always compensated for work performed by the Post, and not by News Corp. (See Living. at 309; Scial. Aff. at ¶ 9.)[12]

48. Throughout her employment, Livingston was supervised by Post employees, most recently Gotthelf and Greenfield, and Zach Haberman prior thereto (Gott. at 79), a Post editor at that time (see Lern. Dec., Exh. 19).

49. At all relevant times, Livingston's APAs have been drafted by Greenfield and/or Gotthelf, and these were reviewed by the Post APA review committee; no News Corp. employees participate in any part of this process. (Lipp. at 146-47; Scial. Aff. at ¶ 8.)

50. All job assignment decisions relating to Livingston were made by Post employees: for example, the decision to assign her to the Queens courthouse was made by Jesse Angelo and Gotthelf, Post employees (see Angelo at 283-84 [Day 1]); the subsequent decision to reassign her to field reporting was likewise made by Gotthelf (Gott. at 199)

---

[12] True and correct copies of referenced excerpts of the deposition of Ikimulisa Livingston, dated January 13, 2012 and February 20, 2013 and February 14, 2013 ("Living. at [page]"), are attached to the Lern. Dec. as Exhibit 17.

51.     The decision to terminate Livingston's employment was made by the Post's then-Publisher, Angelo, in February 2013.  (Angelo at 21-22 [Day 2].)

Dated: May 10, 2013
       New York, New York

                      Respectfully submitted,

                      KASOWITZ, BENSON, TORRES
                        & FRIEDMAN LLP

                      By:  /s/ Mark W. Lerner
                          Marc E. Kasowitz (mkasowitz@kasowitz.com)
                          Mark W. Lerner (mlerner@kasowitz.com)
                          Blythe E. Lovinger (blovinger@kasowitz.com)
                          Garrett D. Kennedy (gkennedy@kasowitz.com)

                      1633 Broadway
                      New York, New York 10019
                      Tel.:  (212) 506-1700
                      Fax:  (212) 506-1800

                      Attorneys for Defendant
                      News Corporation