KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
Garrett D. Kennedy (gkennedy@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700

Attorneys for Defendants NYP Holdings, Inc.,
d/b/a the New York Post, and Col Allan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
AUSTIN FENNER and                                           :
IKIMULISA LIVINGSTON,                                       :
                                                            :
                              Plaintiffs,                   :   **Civ. No.: 09 CV 9832 (LGS)**
                                                            :
          vs.                                               :
                                                            :
NEWS CORPORATION, NYP HOLDINGS,                             :
INC., d/b/a THE NEW YORK POST,                              :
MICHELLE GOTTHELF and , DANIEL                              :
GREENFIELD, in their official and individual                :
capacities,                                                 :
                                                            :
                              Defendants.                   :
------------------------------------------------------------x

## DECLARATION OF GARRETT D. KENNEDY, ESQ.

GARRETT D. KENNEDY, ESQ., hereby declares as follows:

1.   I am an associate with the law firm of Kasowitz, Benson, Torres & Friedman LLP, counsel for Defendant NYP Holdings, Inc., d/b/a the New York Post (the "Post"), and Col Allan (together, "Defendants"). I have personal knowledge of the facts set forth herein, except where otherwise indicated. I submit this Declaration in support of Defendants' Motion for Summary Judgment in the above-captioned action.

2. During the course of this litigation, plaintiff Ikimulisa Livingston ("Livingston") testified that she performed mystery shopping services for employers other than the New York Post. Specifically, Livingston mystery shopped for (at least) two mystery shopping companies, Shop'n Chek, Inc., n/k/a MarketForce, Inc. ("Shop'n Chek"), from August 2005 through July 2010, and, Contemporary Shopping Solutions, Inc. ("CSS"), from March 2008 through November 2010. In a surprising admission on May 6, 2013, she stated that she did not stop mystery shopping in 2010; however, no records of such post-2010 activities have been produced.

3. In connection with her work for CSS, Livingston mystery shopped exclusively at T.D. Bank and/or Commerce Bank (which had recently been acquired by T.D. Bank) branches (together, "T.D. Bank"), and, following each mystery shop, submitted a report that reflected, among other things, the time, date and location of her mystery shop. Livingston testified that the times indicated on this log – which are a single minute entry – indicate the time that she started a mystery shop. Attached hereto as Exhibit 1 are true and correct copies of logs of mystery shops by Livingston, reflecting the time, date and location of mystery shops, which were produced by T.D. Bank in response to a subpoena, and subsequently were produced by Defendants to Plaintiffs with the Bates Nos. NYP-FL003980 through NYP-FL003998.

4. When working for Shop'n Chek, Livingston performed mystery shops at various retail locations including, among others, T-Mobile, Verizon, McDonald's, Bed Bath & Beyond, and Office Depot. In connection with her mystery shopping for Shop'n Chek, she provided information that included the retailer she shopped at, and the time, date and location of that mystery shop. These records reflect the period of time during which Livingston performed a mystery shop. Attached hereto as Exhibit 2 are true and correct copies of logs of mystery shops performed by Livingston that were produced in response to a subpoena by Shop'n Chek, and

subsequently were produced by Defendants to Plaintiffs with the Bates Nos. NYP-FL003952 through NYP-FL003955.

5. Defendants previously produced, with the Bates Nos. NYP-FL004721 through NYP-FL004831, select handwritten timesheets submitted by Livingston to the Post, dated September 2005 through September 2007, that reflect the dates and number of hours worked by Livingston during that time frame. Additionally, Defendants also produced, with the Bates Nos. NYP-FL004753 through NYP-FL004831, records from the Post's electronic time-keeping system, dated October 2007 through November 2010, that were submitted by Livingston to the Post and reflect the dates and number of hours that she worked for the Post. Both the handwritten and electronic records are referred to collectively as the "Timesheets."

6. I have reviewed true and correct copies of the Timesheets which were kept and maintained by the Post's human resources ("HR") department. I relied on the Timesheets in preparing this Declaration, and I have accurately stated in this Declaration the information appearing in the Timesheets, including the dates that Livingston worked for and/or took paid sick or bereavement days from the Post. Pursuant to the Court's endorsed order of May 8, 2013, the timesheets are not attached hereto as an exhibit due to their volume, but are summarized in the chart attached hereto as Exhibit 9, and in paragraphs 12 and 13 herein.

7. I have reviewed Exhibits 1 and 2 and the Timesheets, and have compared the dates and times that Livingston worked for the Post with the dates and times that she conducted mystery shops. Pursuant to the Timesheets, Livingston worked a shift of Sunday through Thursday from in or about 2005 through early September 2007. As of October 1, 2007, and through the end of her employment, Livingston worked from Monday through Friday. (Id.)

From early 2006 until the time of her termination, the time of Livingston's scheduled shift was from 9:00am to 5:00pm. (See Affidavit of Michelle Gotthelf, dated May 9, 2013, at ¶ 18.)

8. My comparison reveals that Livingston conducted a total of 450 mystery shops during her scheduled Post reporting shift from January 2006 through November 2010.

9. From February 21, 2006 through November 30, 2008 – while Livingston was assigned to the Queens courthouses – she conducted 171 mystery shops. Opening arguments in the trial of the three police officers accused of shooting Sean Bell were heard on February 25, 2008, and closing arguments were heard on April 14, 2008; during this time frame, Livingston conducted 19 mystery shops during her scheduled shift for the Post.

10. Attached hereto as Exhibit 9 is a list of the 450 mystery shops performed by Livingston during her scheduled reporting shift (see ¶ 6, supra) on days that the Timesheets indicate that she worked for the Post. This list indicates the retail store and location of Livingston's mystery shop, as indicated in Exhibits 1 and 2. The T.D. Bank records reflect the start time of a mystery shop, indicated below. The Shop'n Chek records reflect the time and duration of the mystery shop, indicated below. On many days, Livingston conducted multiple mystery shops in banks and stores during her scheduled reporting shift, which are highlighted in the attached Exhibit 9.

11. Exhibit 1 identifies telephonic mystery shops at a T.D. Bank branch. Only 22 of Livingston's 450 mystery shops during her Post reporting shift were telephonic. (See Exh. 1.)

12. In addition to her 450 mystery shops during her Post reporting shift, Livingston submitted reports of her mystery shopping experience to T.D. Bank after mystery shopping. She did this on 77 occasions during her scheduled Post shift on the following dates and at the following times:

4

| | | | | |
|---|---|---|---|---|
| 3/13/2008 | 11:03 AM | | 6/9/2009 | 12:40 PM |
| 3/13/2008 | 10:41 AM | | 6/12/2009 | 1:16 PM |
| 3/18/2008 | 2:02 PM | | 7/3/2009 | 2:09 PM |
| 3/26/2008 | 1:14 PM | | 7/3/2009 | 2:02 PM |
| 3/26/2008 | 1:09 PM | | 7/21/2009 | 3:52 PM |
| 4/4/2008 | 11:47 AM | | 8/13/2009 | 10:25 AM |
| 4/9/2008 | 3:12 PM | | 8/26/2009 | 11:02 AM |
| 5/1/2008 | 3:04 PM | | 9/3/2009 | 2:04 PM |
| 5/7/2008 | 3:07 PM | | 9/18/2009 | 1:41 PM |
| 5/19/2008 | 2:04 PM | | 9/18/2009 | 1:36 PM |
| 5/20/2008 | 3:00 PM | | 9/21/2009 | 9:33 AM |
| 5/23/2008 | 3:49 PM | | 10/14/2009 | 9:07 AM |
| 5/23/2008 | 3:30 PM | | 10/20/2009 | 9:33 AM |
| 6/2/2008 | 2:37 PM | | 12/31/2009 | 9:50 AM |
| 6/3/2008 | 3:18 PM | | 12/31/2009 | 9:47 AM |
| 6/3/2008 | 3:13 PM | | 12/31/2009 | 9:34 AM |
| 6/4/2008 | 4:58 PM | | 3/2/2010 | 10:33 PM |
| 6/30/2008 | 3:28 PM | | 3/25/2010 | 9:17 AM |
| 7/2/2008 | 3:30 PM | | 4/19/2010 | 2:16 PM |
| 7/2/2008 | 3:24 PM | | 4/19/2010 | 11:31 AM |
| 7/4/2008 | 12:46 PM | | 4/19/2010 | 11:25 AM |
| 7/4/2008 | 12:42 PM | | 4/19/2010 | 11:20 AM |
| 9/2/2008 | 2:10 PM | | 4/30/2010 | 4:47 PM |
| 10/2/2008 | 3:05 PM | | 5/19/2010 | 1:35 PM |
| 10/3/2008 | 4:42 PM | | 5/19/2010 | 1:30 PM |
| 10/17/2008 | 3:56 PM | | 5/20/2010 | 10:26 AM |
| 11/4/2008 | 4:23 PM | | 5/20/2010 | 10:20 AM |
| 11/5/2008 | 10:24 AM | | 5/27/2010 | 10:12 AM |
| 11/14/2008 | 1:17 PM | | 5/27/2010 | 10:09 AM |
| 11/14/2008 | 1:07 PM | | 5/27/2010 | 9:59 AM |
| 11/19/2008 | 10:55 PM | | 6/25/2010 | 4:10 PM |
| 11/21/2008 | 11:13 PM | | 9/9/2010 | 12:54 PM |
| 11/21/2008 | 11:04 PM | | 9/29/2010 | 9:55 AM |
| 12/10/2008 | 12:15 PM | | 9/29/2010 | 9:49 AM |
| 12/10/2008 | 12:11 PM | | | |
| 12/10/2008 | 12:07 PM | | | |
| 1/6/2009 | 1:54 PM | | | |
| 2/10/2009 | 4:47 PM | | | |
| 2/10/2009 | 4:41 PM | | | |
| 2/10/2009 | 4:36 PM | | | |
| 3/19/2009 | 4:05 PM | | | |
| 5/11/2009 | 12:58 PM | | | |
| 6/8/2009 | 11:52 AM | | | |

13. The Timesheets also reflect dates on which Livingston took paid sick leave and paid bereavement leave from the Post. On the following dates, Livingston took paid sick and/or bereavement leave but performed twelve mystery shops during the time of her scheduled Post shift:

| | | |
|---|---|---|
| 1 | 10/13/2008 | 2:00 PM |
| 2 | 10/13/2008 | 4:11 PM |
| 3 | 6/1/2009 | 3:53 PM |
| 4 | 6/1/2009 | 4:09 PM |
| 5 | 6/1/2009 | 4:32 PM |
| 6 | 8/10/2009 | 3:12 PM |
| 7 | 8/10/2009 | 3:42 PM |
| 8 | 8/10/2009 | 4:00 PM |
| 9 | 1/27/2010 | 3:45 PM |
| 10 | 1/27/2010 | 4:05 PM |
| 11 | 5/14/2010 | 1:50 PM |
| 12 | 10/29/2010 | 4:07 PM |

14. Plaintiffs have produced a total of 92 audio recordings in this matter, which I have reviewed. In deposition, Livingston admitted to making these audio recordings, and to doing so surreptitiously, starting in or about early 2008. As further detailed below, true and correct copies of six of these audio recordings have been copied to a CD-ROM, attached to this Declaration, as Exhibits 3 through 8. Transcripts of these recordings have been prepared by counsel as an aid to assist the Court in its review of these exhibits, and these have been attached hereto as Exhibits 3 through 8.

15. Attached hereto as Exhibit 3 is a true and correct copy of an audio recording previously produced by Livingston, with the file name 01_DW_A0016.wav, as well as a transcript of this recording prepared by counsel, which is a recording of a conversation between Livingston and Zachary Haberman ("Haberman") occurring in or about 2008.

16. Attached hereto as Exhibit 4 is a true and correct copy of an audio recording previously produced by Livingston, with the file name 03_DW_A0031.wav, as well as a transcript of this recording prepared by counsel, which is a recording of a conversation between Livingston and Haberman occurring in or about 2008.

17. Attached hereto as Exhibit 5 is a true and correct copy of an audio recording previously produced by Livingston, with the file name 25_DW_B0134.wav, as well as a transcript of this recording prepared by counsel, which is a recording of a conversation between Livingston and Haberman occurring in or about 2008.

18. Attached hereto as Exhibit 6 is a true and correct copy of an audio recording previously produced by Livingston, with the file name 54_DW_B0183.wav, as well as a transcript of this recording prepared by counsel, which is a recording of a conversation between Livingston and Haberman occurring in or about 2008.

19. Attached hereto as Exhibit 7 is a true and correct copy of an audio recording previously produced by Livingston, with the file name 87_DW_B0268.wav, as well as a transcript of this recording prepared by counsel, which is a recording of a conversation between Livingston and Greenfield occurring in or about 2008.

20. Attached hereto as Exhibit 8 is a true and correct copy of an audio recording previously produced by Livingston, with the file name 09_DW_D0090.wav, as well as a transcript of this recording prepared by counsel, which is a recording of a conversation between Livingston and Haberman occurring in or about 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 10, 2013.

_____
Garrett D. Kennedy