```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AUSTIN FENNER and                              :
IKIMULISA LIVINGSTON,                          :
                                               :
                      Plaintiffs,              :    No. 09 CV 9832 (LBS)
           v.                                  :
                                               :
NEWS CORPORATION, NYP HOLDINGS,                :
INC., d/b/a THE NEW YORK POST,                 :
MICHELLE GOTTHELF and DANIEL                   :
GREENFIELD, in their official and individual   :
capacities,                                    :
                                               :
                      Defendants.              :
------------------------------------------------------------- X
```

## AFFIDAVIT OF IKIMULISA LIVINGSTON

STATE OF NEW YORK    )
                     )   ss.:
COUNTY OF NEW YORK   )

IKIMULISA LIVINGSTON, being duly sworn, deposes and says:

1. I am a Plaintiff in the above-captioned action. I have personal knowledge of the facts set forth herein and submit this affidavit in opposition to the motion for summary judgment of the Defendants NYP Holdings, Inc., d/b/a the New York Post (the "Post"), Michelle Gotthelf ("Gotthelf") and Daniel Greenfield ("Greenfield") (together, with News Corporation ("News Corp."), the "Defendants").

2. I am a Black and/or African-American female.

3. I worked as a reporter at the Post from 1997 until I was unlawfully terminated on or around February 26, 2013.

4. Attached hereto as Exhibit 1, previously produced with the Bates Nos. IL_8694 to IL_8701 are copies of four examples of news stories written by me and one to which I contributed reporting for the Post during 2007 and 2008. During my tenure as the reporter for

the Queens courts beat for the Post, I broke many exclusive stories on high-profile cases and beat the New York Daily News (the "Daily News") on many others. By way of example only, I developed and wrote the following exclusive stories in the year before I was removed from the Queens courts reporter position:

- "New Trial Hope for Stab Con," June 23, 2008 – An exclusive story about Kareem Bellamy, who served over 13 years in prison for murder, but was eventually freed from prison when his conviction was vacated.
- "'50 Shot' Dive Gets Closed," June 20, 2008 – An exclusive story on a strip club visited by Sean Bell on the night he was shot and killed by New York Police Department officers.
- "Sex Pol's Plea Deal Slammed," March 17, 2008 – Exclusive comments obtained from a sexual abuse victim of then-Councilperson Dennis Gallagher.
- "50 Shot Bride in Paid Ad," February 21, 2008 – Exclusive story about Sean Bell's fiancée signing up as a paid model for Rocawear.
- "Bell 'Sex' Shock," Sept. 4, 2007 – An exclusive story I found in court papers about how New York Police Department officers overheard Sean Bell and his friends asking a woman to go to a hotel with them for sex outside a night club before Bell was shot and killed by police.

In April 2008, a story ran in the Post based on an exclusive jailhouse interview I did with defendant Jack Rhodes on the eve of his trial for attacking 101-year-old Rose Morat and another elderly woman. I also beat the Daily News to an August 12, 2008 story headlined "Judge's Queens Home Shot Up" through an early tip from a Queens courts source of mine that came in

before any of the police beat reporters learned of the story. Despite this string of successes, among others, I was still discriminatorily demoted from my Queens courts position a few months later.

5. In 2008, I pitched a story about a meeting between Judge Arthur Cooperman, who presided over the Sean Bell police shooting trial, and court officers following the trial at which the trial was to be discussed. The Judge Cooperman story would have been an exclusive, and was the first time that Judge Cooperman was commenting publicly about the controversial case. The pitched story was rejected by my editors, who did not even want me to cover the meeting, and it did not run in the Post.

6. Following the Sean Bell trial (which ended in late April 2008), I pitched a story to my supervisors about an indictment that was handed up against a reputed mobster named Joseph Bonelli. This story pitch was rejected by my editors and the story did not run.

7. Reporters Lorena Mongelli, Amber Sutherland, Rich Calder and Ed Robinson all are white.

8. On Tuesday, December 2, 2008, I received a call from my supervisor, Defendant Gotthelf, telling me to meet with her the next day at 10:00am. Defendant Gotthelf told me in my meeting with her the next day that I was losing my Queens courts beat reporter position and that I was being assigned to runner/field reporter duty. She did not provide a reason. I learned that day that William Gorta, a White male, had been demoted from his editorial job the previous day, reportedly due to a workplace argument and the mishandling coverage of a news story involving professional football player Plaxico Burress. Later, I learned that Mr. Gorta had replaced me as the reporter covering the Queens court beat at a higher rate of pay than my own.

9. In the December 3, 2008 meeting in which Defendant Gotthelf informed me of my demotion from my Queens courts reporter position, she also told me that although I would again be a general assignment reporter (commonly referred to as a "runner"), but that I would not have to be out on the street all the time and I would sometimes be reporting and working from the office as well with access to a desk and phone.

10. Defendant Gotthelf never assigned me a desk or phone despite her promise to me in the December 3, 2008 demotion meeting. However, white general assignment reporter Lorena Mongelli was still given access to a desk and phone in the newsroom even while a "runner."

11. Following my protected complaint to Defendant Gotthelf in February 2009, I was denied access to editors much more often, and was forced to discuss work matters predominantly with rewrite staff rather than editors, including my supervisors. This discriminatory and retaliatory marginalization made it more difficult for me to perform my job duties and also limited my reporting opportunities.

12. In the summer of 2009, I received a warning letter from my supervisors for the first time since I started working at the Company in 1997. I was told by Defendants Gotthelf and Greenfield that the upshot of receiving the letter was that I could be fired at any time.

13. The retaliation to which I was subjected following my February 2009 complaint to Defendant Gotthelf continued through 2012 and the beginning of 2013.

14. Defendant Gotthelf attended my January 13, 2012 deposition, at which I testified about my mystery shopping activities, in its entirety.

15. I met with Defendants Gotthelf and Greenfield regarding my 2012 performance evaluation on or around July 12, 2012. In that meeting, neither Ms. Gotthelf nor Mr. Greenfield

mentioned mystery shopping, income from other sources, work for employers other than the Company, misconduct or policy violations of any kind.

16. The discrimination, hostile work environment and retaliation I experienced during my employment culminated in my discriminatory and retaliatory termination on February 26, 2013 based on my race and color, as well as because of my opposition to the Company's discriminatory practices.

17. The terms and conditions of my employment included employment policies and procedures, as well as employee benefits plans, administered and created by News Corp., including but not limited to, health insurance, retirement savings plans and the Fox Credit Union. Membership in the Fox Credit Union was, to my knowledge, limited to employees of News Corp. and the Post (or other affiliates). The Fox Credit Union offers favorable interest rates and other benefits not available to Company employees through non-affiliated financial institutions. News Corp. and its affiliates' employees, including the Post, also shared private gym facilities and attended common News Corp. events, such as health fairs, at 1211 Avenue of the Americas.

18. I received my performance evaluations in a News Corp. envelope, as did my coworkers at the Post.

19. Employees working at the Post received emails regarding and were eligible for various News Corp. employee discounts through various companies and for goods and services such as American Airlines, Dell computers, HarperCollins, cell phone service and Broadway shows.

20. The Third Amended Complaint does not contain every discriminatory, harassing, retaliatory, offensive, degrading and/or improper comment or act that I witnessed, experienced and/or had described to me during my employment with Defendants.

21. I also have not described in this affidavit every discriminatory, harassing, retaliatory, offensive, degrading and/or improper comment or act that I witnessed, experienced and/or had described to me during my employment with the Defendants.

22. I also rely on the allegations made in my Third Amended Complaint and upon the affidavit submitted by the other Plaintiff in the above-captioned case, Austin Fenner, as well as any other affidavits submitted by current and former employees of the Defendants in support of my Third Amended Complaint.

Ikimulisa Livingston

Sworn to before me on
May 23, 2013

_____
Notary Public

LAWRENCE MICHAEL PEARSON
Notary Public, State of New York
No. 02PE6225600
Qualified in New York County
Commission Expires July 26, 20_14_