THOMPSON WIGDOR LLP
Lawrence M. Pearson (lpearson@thompsonwigdor.com)
Douglas H. Wigdor (dwigdor@thompsonwigdor.com)
85 Fifth Avenue, New York, NY
New York, New York 10003
Tel.:   (212) 257-6800

*Attorneys for Plaintiffs*
Austin Fenner and Ikimulisa Livingston

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

AUSTIN FENNER and
IKIMULISA LIVINGSTON,

                Plaintiffs,          Civil No. 09 CV 9832 (LGS)

          vs.

NEWS CORPORATION, NYP HOLDINGS,
INC., d/b/a THE NEW YORK POST,
MICHELLE GOTTHELF and, DANIEL
GREENFIELD, in their official and individual
capacities,

                Defendants.
------------------------------------------------------------x

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiffs Kim Livingston and Austin Fenner, by their attorneys Thompson Wigdor LLP, respectfully submits this Statement of Undisputed Material Facts in support of its Opposition to Defendant News Corporation's ("News Corp.") Motion for Summary Judgment against News Corporation.

1.      News Corp. is incorporated under Delaware law and owns "hundreds" of companies worldwide. (Lipp. at 19, 47.) Its subsidiaries are primarily media companies, and they employ approximately 50,000 to 60,000 individuals globally. (Id. at 19.)

**Response:**

Admitted for purposes of this motion.[1]

2.      NYP Holdings, Inc., d/b/a the New York Post (the "Post"), is a wholly owned subsidiary of News America Incorporated ("NAI"), which in turn is a subsidiary of News Publishing Australia Holdings Ltd., which is in turn owned by News Corp. (Id. at 43-44.) The Post is one of the "hundreds" of subsidiaries indirectly owned by News Corp. (Id.)

**Response:**

Admitted for purposes of this motion.[2]

3.      The Post and News Corp. each has its own human resources ("HR") department, and there is no overlap or sharing of employees between these departments. (Scial. Aff. at ¶ 4.)

**Response:**

Disputed. Defendant posits a legal conclusion and not an uncontested statement of fact. The Post's HR department was ultimately under the control of the News Corp. During the relevant time period, Amy Scialdone, as the Head of Human Resources, reported to Paul Carlucci,

---

[1] All statements admitted herein are admitted without prejudice and solely for the purpose of responding to Defendant's Statement of Undisputed Material Facts pursuant to rule 56.1 of the Local Civil rules of the U.S. District Court for the Southern District of New York and responding to Defendant's motion for summary judgment.
[2] Submitted in support of Plaintiffs' opposition to the motion are the affidavit of Kim Livingston, dated May 23, 2013 ("Liv. Aff."), Austin Fenner, dated May 23, 2013 ("Fenn. Aff.") and Sandra Guzman, dated May 23, 2013 ("Guz. Aff."), as well as the declaration of Lawrence M. Pearson, dated May 24, 2013 ("Pear. Dec."), to which all other exhibits referenced herein, unless otherwise specified, are attached. Exhibits attached to the declaration of Mark W. Lerner, dated May 10, 2013 and attached to Defendants' motion ("Lern. Dec.") also will be referenced.

the Post's Publisher, who, in turn, reported to the COO of News Corp. (Carl. at 12, 17-18, 20-25, 28-29[3]; Scial. at 19[4]).

4. Neither News Corp. nor its HR department has authority over the Post's HR department, and the Post makes all hiring, firing, salary, and disciplinary decisions regarding its employees without the involvement of News Corp. or its HR department. (Id. at ¶¶ 6, 9, 10.)

**Response:**

Disputed. Defendant sets forth a legal conclusion and not an uncontested statement of fact. News Corp. controls the Post's HR and "enforced" its Standards of Business Conduct Policy as well as its Electronic Communications Policy. (Pear Dec. Ex. 1 at NYP 0816; Lipp at 229). Moreover, the Post's Publisher for some of the relevant time, Lachlan Murdoch, was simultaneously the Deputy COO of News Corp. (Pear. Dec. Ex. 19 at 6951-6857). Lachlan Murdoch hired Ms. Guzman and Col Allan. (Allan at 19;[5] Guz. at 342-343).[6]

5. Applications for employment with the Post are and have been at all relevant times handled by the Post's HR department and/or the relevant Post manager, and not by News Corp. (Id. at ¶ 6.)

**Response:**

Disputed. Hiring at the Post is not done exclusively through human resources. Lachlan Murdoch reviewed Ms. Guzman's resume and offered her the position. (Guz. at. 13-14; 342-

---

[3] True and correct copies of relevant excerpts of the deposition transcript of Paul Carlucci, dated June 22, 2012, designated "Carl. at [page]," are attached to the Pearson Declaration as Exhibit 2.
[4] True and correct copies of relevant excerpts of the deposition transcript of Amy Scialdone, dated June 28, 2012, designated "Scial. at [page]," are attached to the Pearson Declaration as Exhibit 7.
[5] True and correct copies of relevant excerpts of the deposition transcript of defendant Col Allan, dated February 14, 2012 and February 21, 2013, designated "Allan at [page]," are attached to the Pearson Declaration as Exhibit 1.
[6] True and correct copies of relevant excerpts of the deposition transcript of plaintiff Sandra Guzman, dated October 13, 2011 and February 13, 2012, designated "Guz. at [page]," Lerner Declaration as Exhibit 18.

343). Rupert Murdoch, the Chairman of News Corp., appointed high-level employees to the Post. (Allan at 20, 457; Carl. at 13).

6. The Post has developed its own performance evaluations and its supervisors are responsible for reviewing employee performance; the evaluations are reviewed by a committee of Post managers and records of evaluations are maintained by the Post's HR department. (Lipp. at 146-47; Scial. at 23-24; Scial. Aff. at ¶ 8.) No News Corp. employees are involved in this process. (Scial. Aff. at ¶ 8.)

**Response:**

Disputed in part. Defendant states a legal conclusion as an uncontested statement of fact. News Corp. demonstrated its participation in and control of the performance review process at the Post by distributing performance reviews to Post employees in News Corp. envelopes. (Living. Aff. ¶ 19). Moreover, Post employees may be properly characterized as News Corp. employees because the Post and News Corp. are a single integrated enterprise or, in the alternative, joint employers.

7. The Post sets and has set at all relevant times the salaries of its employees without intervention by News Corp. (See id. at ¶ 9.)

**Response**:

Disputed. Defendant's forms demonstrated that the Publisher had approval authority over Post employees' salaries. (Pear. Dec. Ex. 3 at NYP 0206, NYP 0210). Lachlan Murdoch, for a portion of the relevant time, served as the Deputy COO of News Corp. at the same time he was Publisher of the Post. (Pear. Dec. Ex. 18 at 6951-6957). Thus, for a portion of the relevant time, at least one high-level News Corp. executive had the direct ability to set rates of pay.

Furthermore, News Corp. executives, including Rupert Murdoch, are responsible for hiring individuals for various positions at the Post.

8. The Post also has developed numerous policies applicable to its employees, including its Code of Conduct, its Travel and Entertainment Expense Policy, its E-mail Policy, and its Cell-Phone Usage Policy. (Id. at 318-19, 326, 330-31, 335-36.)

**Response**:

Disputed in part. The Cell-Phone Usage Policy was created in consultation with a News Corp. attorney, Jordan Lippner. (Lipp. at 318).[7]

9. The Post has also adopted certain general policies prepared by News Corp., such as the Standards of Business Conduct (the "Standards"), which lays out an employee's general legal obligations with regards to conflicts of interest and unlawful harassment, but does not dictate discipline for violations or set forth policies governing day-to-day labor relations. (Id. at 220, 236, 237-38; Lerner Dec., Exh. 3.)

**Response**:

Disputed. The Electronic Communication Policy and Standards of Business Conduct, during the relevant time, had enforcement provisions, including discipline and/or dismissal for employees found in violation. (Pear. Dec. Ex. 1 at NYP 0186; Lipp. at 229).

10. The Post is, and has been at all relevant times, responsible for enforcing all policies governing its employees, including investigating possible breaches and disciplining its employees. (Id. at 230, 238, 359; Scial. Aff. at ¶ 10.) News Corp. has no role in disciplining Post employees, nor does it have the authority to do so. (Id.)

---

[7] True and correct copies of relevant excerpts of the deposition transcript of Jordan Lippner, dated February 29, 2012, designated "Lipp. at [page]," are attached to the Pearson Declaration as Exhibit 4).

5

**Response**:

Disputed. As mentioned in ¶ 9, supra, News. Corp enforced its Standards of Business Conduct and Electronic Communications Policy with respect to all of its employees and had the power to dismiss and/or discipline violators. (Pear. Dec. Ex. 1 at NYP 0186; Lipp. at 229). Mr. Lippner, a News Corp. attorney, investigated breaches of Policy as a "resource to Human Resources at the New York Post." (Jehn 57: 15-18).

11. Policies utilized by the Post are distributed by the Post's HR department. (See, e.g., Lipp. at 215, 304.)

**Response**:

Admitted for purposes of this motion, but any factual or legal significance is disputed.

12. Employees are, and have been at all relevant times, trained to direct any complaints to the Post's HR department, a supervisor, an attorney for the Post, or to an anonymous telephone hotline. (Scial. at 60, 64-66; Jehn at 54, 57.) The Post's policies do not provide for employees to submit complaints to News Corp. (Id.)

**Response**:

Disputed. In the last sentence of this paragraph, Defendant fails to account for the News Corp. "alert line," a system in place for Company employees to lodge all types of complaints. (Lipp. at 259: 18-23). Moreover, Post employees were able to complain to Mr. Lippner. (Jehn at. 59-60;[8] Scial. at 48). Thus, Defendant's undisputed fact has no basis in the factual record.

---

[8] True and correct copies of referenced excerpts of the deposition of Jennifer Jehn, dated June 26, 2012 ("Jehn at [page]"), are attached to the Pear. Dec. as Exhibit 9.

6

13.  The Post shares a benefit plan with NAI but not with News Corp. (Lipp. at 388-91.)

**Response**:

Disputed. Significant evidence in the record demonstrates that the Post shares benefit plans with News Corp., including healthcare benefits, retirement savings plans, and access to the special interest rates of the Fox Credit Union. (Living. Aff. ¶ 19).

14.  There are no employees shared between the Post and News Corp.

**Response**:

Disputed. Examples of shared employees between the News Corp. and the Post abound. For example, Lachlan Murdoch hired Ms. Guzman while serving as Deputy COO of News Corp. (Pear. Dec. Ex. 18 at SG 6951-57).

15.  The financial and day-to-day operations of the Post and News Corp. are, and have been at all relevant times, separate and distinct. (Lipp. at 379.)

**Response**:

Disputed. Defendants posit a legal conclusion and not an uncontested statement of fact. Rupert Murdoch and News Corp.'s COO oversaw day-to-day operations at the Post. (Allan at 500; Ang. at 50).

16.  The Post maintains and has maintained at all relevant times, its own separate financial books and records, including profit and loss statements. (Racano Aff. at ¶ 5.)

**Response**:

Admitted. However, to the extent Defendant attempts to suggest otherwise, the Post's maintenance of separate financial books and material does not preclude it from being under News Corp.'s financial control.

17. The Post has its own CFO, Michael Racano, who is a Post employee, and Finance Department, which is comprised entirely of Post employees. (Racano Aff. at ¶ 1,5.)

**Response**:

Admitted. However, to the extent Defendant attempts to suggest otherwise, Michael Racano is still a part of the larger News Corp. financial apparatus. Mr. Racano reports to the Publisher of the Post who, in turn, reports to the COO of News Corp. (Scial. at 19; Carl. at 17-18). Accordingly, News Corp. retains ultimate control.

18. News Corp. and the Post have separate bank accounts. (Lipp. at 382.)

**Response**:

Admitted for the purposes of this motion but any legal or factual significance is disputed.

19. No members of the Post's finance department are or have been News Corp. employees. (Id. at ¶ 5.)

**Response**:

Admitted for the purposes of this motion but any legal or factual significance is disputed.

20. Each of News Corp. and the Post is, and has been at all relevant times, responsible for its own day-to-day expenses; for instance, although both use the same travel agency, each pays that agency separately for its employees' travel, and such expenses are independently approved by the company of the traveling employee. (Lipp. at 376-77.)

**Response**:

Admitted, but any legal or factual significance is disputed.

21.     The two companies "each had their own offices at 1211 Avenue of the Americas during Ms. Guzman's employment": News Corp. occupies offices on the 4th, 7th and 8th floors of the building located at 1211 Avenue of Americas (the "1211 Building"), while the Post's editorial offices are on the 9th and 10th floors of the 1211 Building, and its HR and finance departments occupied the 15th floor for parts of the relevant time period. (Id. at 48-51, 57.)

**Response**:

Disputed in part. Col Allan testified the Post has employees on the 8th Floor and a cafeteria (Allan at 10, 12).

22.     Access between the different offices of News Corp. and the Post is possible only by using a company-specific employee identification card. (Id. at 81.)

**Response**:

Disputed in part. On page 81 of his deposition, Mr. Lippner testified that at 1211 Avenue of the Americas there are 4 different elevator banks which require an ID card. (Lipp. at 81). Once an individual accesses that general elevator area, he or she no longer needs to use the ID card for the elevator. Id. Mr. Lippner never specified whether different elevator banks require different ID cards. Id. In fact, Mr. Lippner never confirmed that a specific ID card was required to access any particular office or part of the building. Id.

23.     The 1211 Building itself is owned by a third-party (id. at 106), is occupied by numerous other companies with no connection to News Corp. or the Post (id. at 80), and the Post is charged rent for the floors it occupies. (Racano Aff. at ¶ 8.)

9

**Response:**

Admitted, but any factual or legal significance is disputed.

24. News Corp. employees are not, and have not been at any relevant time, involved in the process of printing or distributing the Post's daily newspaper. (Id. at ¶¶ 3-4.)

**Response:**

Admitted, but any factual or legal significance is disputed.

25. The Post also has its own marketing department responsible for advertising and marketing the *New York Post* newspaper. (Id. at ¶ 4.)

**Response:**

Admitted. However, to the extent Defendant suggests News Corp. does not involve itself in the Post's advertising or marketing, Jesse Angelo conceded that he consults Rupert Murdoch, the Chairman of News Corp., for matters related to marketing and advertising. (Ang. at 50).[9] Moreover, Les Goodstein, a News Corp. employee, worked on *Tempo* in an advertising, sales and marketing capacity. (Good. at 90-91).[10] Thus, News Corp. participates in the Post's marketing and advertising.

26. News Corp. and the Post, now and at all relevant times, "maintain[] separate and distinct computer databases, [and] computer servers" and "[e]ach company has separate IT departments." (Lipp. at 111-12.) Further, both companies have distinct e-mail address domain names. (Id. at 108.)

**Response:**

Admitted for the purposes of this motion.

---

[9] True and correct copies of relevant excerpts of the deposition transcript of Jesse Angelo, dated April 25, 2012, designated "Angelo at [page]," are attached to the Pearson Declaration as Exhibit 5.
[10] True and correct copies of referenced excerpts of the deposition of Les Goodstein, dated June 15, 2012 ("Good. at [page]"), are attached to the Lerner Dec. as Exhibit 16.

10

27. Both companies maintain separate security departments which do not provide services to the other. (Id. at 107.)

**Response**:

Disputed in part. News Corporation Corporate Security emailed a warning to all Post employees in anticipation of a demonstration planned by Reverend Al Sharpton on February 20, 2009, which advised all Company employees to contact "Corporate Security" for any questions or concerns. (Lipp. at 408; Pear. Dec. Ex.4 at NYP 3851). Thus, the evidence in the record suggests that the Post and News Corp.'s security departments, at a minimum, "provide services to the other."

28. None of the Post's senior management is or ever has been an employee of News Corp.

**Response**:

Disputed. This statement is patently false. Lachlan Murdoch, for example, simultaneously served as the Deputy COO of News Corp. and Publisher of the Post. (Pear. Dec. Ex. 18 at SG 6951-6957). Thus, members of the Post's senior management have served in a dual role with the News Corp. executive team.

29. Paul Carlucci, the Publisher of the Post during the relevant time period, was its most senior executive responsible for its day-to-day operations (id. at 149-51); he has never been an employee of News Corp. (See Carl. at 360.)

**Response**:

Disputed in part. Mr. Carlucci reported directly to the News Corp. COO. (Carl. at 28-29). Accordingly, given his position under the direct supervision of a News Corp. executive and the single integrated nature of the two entities, Mr. Carlucci was an employee of News Corp.

30.     Jesse Angelo, the Post's present publisher, is not and has never been employed by News Corp. (See Angelo at 15 [Day 2].)

**Response**:

Disputed. This statement is a legal conclusion and not an uncontested statement of fact. The Post and News Corp. are a single integrated enterprise. Jesse Angelo reports directly to the COO of News Corp. (Ang. at 70). News Corp., therefore, directly controls Mr. Angelo's employment.

31.     Col Allan is the highest ranking editor at the Post (Lipp. at 51); he has never been an employee of the News Corp.

**Response:**

Disputed. This statement constitutes a legal conclusion. Col Allan reports directly to Rupert Murdoch, the Chairman of News Corp. (Allan ay 21). Moreover, Mr. Allan was hired by Lachlan Murdoch. (Allan at 19).

32.     Neither the Post's current head of HR, Amy Scialdone, nor its previous head, Jennifer Jehn, has ever been employed by News Corp. (See Scial. at 8, 11-18; Jehn at 14-15, 36-45.)

**Response**:

Disputed. Defendants posit a legal conclusion and not an uncontested statement of fact. The Post and News Corp. are a single integrated enterprise; therefore, News Corp. may properly be characterized as Jennifer Jehn and Amy Scialdone's employer. Moreover, Scialdone and Jehn's supervisor reported to the COO of News Corp. (Carl. at 28-29).

33.     The Post's Executive Committee is comprised of the Post's department heads (Lipp. at 198-99), including during the relevant time period, Carlucci, Allan, Jehn, Racano, and Scialdone, none of whom are employed by News Corp. (Scial. Aff. at ¶ 12.)

**Response**:

Disputed in part. The Post's Executive Committee also includes Les Goodstein, a News Corp. employee. (Good. at 87-88, 100, 111, 112). As such, the Post's Executive Committee includes an individual whose primary employer is News Corp.

34.     Les Goodstein is an employee of NAI, and entered into a contract for employment with NAI, and not News Corp. (Lern. Dec., Exh. 15.)

**Response**:

Disputed in part. News America, Inc. and News Corp. are a single integrated enterprise and are indistinguishable from one another. Mr. Goodstein's title and email address reflect this interrelated relationship between the two entities. (Good. at 14,15).

35.     NAI is a separate company from News Corp. (Id. at 18.)

**Response**:

Disputed. Defendants state a legal conclusion and not an uncontested fact. The weight of the evidence shows that NAI is part of News Corp. single integrated enterprise.

36.     The Post has a Management Council that no News Corp. employees sit on. (See Carl. at 320-23.)

**Response**:

Disputed. This statement reflects the legal conclusion that News Corp. and the Post are not a single integrated enterprise and states it as an uncontested fact.

13

37. News Corp.'s Board is comprised of sixteen individuals, only two of whom, K. Rupert Murdoch and David Devoe, also sit on the Post's Board of Directors. (Compare Lern. Dec., Exh. 9, at No. 19, with Lern. Dec., Exh. 10, at No. 19.)

**Response**:

Admitted, with the caveat that it is undisputed that 2 of 4 members of the Post's Board, i.e. half, is comprised of News Corp. executives. (Def.'s Mem. at 6).

38. Neither K. Rupert Murdoch or David Devoe is employed by the Post. (Scial. Aff. at ¶ 9).

**Response**:

Admitted for the purposes of this motion. However, to the extent Defendant suggests that Mr. Murdoch does not exercise control over the Post, it is disputed. Mr. Murdoch's control over the Post's business and editorial functions is well established by the testimony of Col Allan and Jesse Angelo. (Allan at 500; Ang. at 50).

39. Fenner was hired by the Post in or about April 2007. (See Lern. Dec., Exh. 10.) Fenner submitted a job application to the Post (id., Exh. 11), interviewed with Daniel Colarusso, then employed by the Post as its Metro Desk editor (Fenner at 19), met with Amy Scialdone, employed by the Post as its Vice President of HR (id. at 20-21), and signed an offer of employment with the Post on April 17, 2007 (Lern. Dec., Exh. 10).

**Response:**

Admitted for purposes of this motion.

40. Fenner submitted a job application to the Post (id., Exh. 11), interviewed with Daniel Colarusso, then employed by the Post as its Metro Desk editor (Fenner at 19) , met with

14

Amy Scialdone, employed by the Post as its Vice President of HR (id. at 20-21), and signed an offer of employment with the Post on April 17, 2007 (Lern. Dec., Exh. 10).

**Response**:

Admit for purposes of this motion.

41.     While employed, Fenner was always compensated by the Post and not by News Corp. (Fenner at 21; Scial. Aff. at ¶ 9.)

**Response:**

Disputed. This statement reflects a legal conclusion and not an uncontested statement of fact. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Furthermore, Austin Fenner received benefits through programs administered by News Corp. Accordingly, Austin Fenner was paid by both News Corp. and the Post.

42.     During his employment with the Post, Fenner worked as a senior reporter, reporting on breaking news and developing stories for publication in the *New York Post* newspaper. (See Green. at 319; Fenner at 76-78.) He did not provide any services to News Corp.

**Response:**

Disputed. This statement reflects a legal conclusion and not an uncontested statement of fact. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Accordingly, Mr. Fenner provided services to both News Corp. and the Post.

43.     Fenner was supervised by Colarusso and, subsequently, by Michelle Gotthelf, both Post employees. (Scial. Aff. at ¶ 7; Gott. at 9.)

**Response:**

Disputed in part. Defendant fails to account for News Corp. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Accordingly, Defendant fails to include News Corp. as an employer of Mr. Colarusso and Ms. Gotthelf, rendering this statement incomplete.

44. Fenner's annual performance appraisals ("APAs") were prepared by his supervisors and subsequently reviewed by the Post's APA review committee, no members of which are News Corp. employees. (Scial. Aff. at ¶ 8.)

**Response:**

Disputed in part. This statement reflects a legal conclusion and not an uncontested statement of fact. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Accordingly, Mr. Angelo and Ms. Gotthelf are employees of News Corp. and the Post.

45. In November 2009, Fenner's employment with the Post was terminated; this decision was made by Gotthelf in consultation with Daniel Greenfield, the Deputy Metro Desk editor (Green. at 411), neither of whom is a News Corp. employee (Gott. at 9; Scial. Aff. at ¶ 7).

**Response:**

Disputed in part. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Accordingly, Mr. Angelo and Ms. Gotthelf are employees of News Corp. and the Post.

46. Livingston applied for employment with the Post on January 28, 1997 (Lern. Dec., Exh. 15) and signed an offer of employment with the Post on February 20, 1997 (id., Exh. 16).

**Response**:

Admitted for purposes of this motion, but any factual or legal significance is disputed.

47.   Livingston was always compensated for work performed by the Post, and not by News Corp. (See Living. at 309; Scial. Aff. at ¶ 9.)

**Response**:

Disputed. This statement reflects a legal conclusion and not an uncontested statement of fact. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Furthermore, Austin Fenner received benefits through programs administered by News Corp. Accordingly, Austin Fenner was paid by both News Corp. and the Post.

48.   Throughout her employment, Livingston was supervised by Post employees, most recently Gotthelf and Greenfield, and Zach Haberman prior thereto (Gott. at 79), a Post editor at that time (see Lern. Dec., Exh. 19).

**Response**:

Admitted for the purposes of this motion.

49.   At all relevant times, Livingston's APAs have been drafted by Greenfield and/or Gotthelf, and these were reviewed by the Post APA review committee; no News Corp. employees participate in any part of this process. (Lipp. at 146-47; Scial. Aff. at ¶ 8.)

**Response**:

Disputed in part. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Accordingly, Mr. Angelo and Ms. Gotthelf are employees of News Corp. and the Post.

50.     All job assignment decisions relating to Livingston were made by Post employees: for example, the decision to assign her to the Queens courthouse was made by Jesse Angelo and Gotthelf, Post employees (see Angelo at 283-84 [Day 1]); the subsequent decision to reassign her to field reporting was likewise made by Gotthelf (Gott. at 199)

**Response:**

Disputed. The Post and News Corp. are a single employer, or, in the alternative, joint employers. Accordingly, Mr. Angelo and Ms. Gotthelf are employees of News Corp. and the Post.

51.     The decision to terminate Livingston's employment was made by the Post's then-Publisher, Angelo, in February 2013. (Angelo at 21-22 [Day 2].)

**Response:**

Admitted for the purposes of this motion.

Dated: May 24, 2013
      New York, New York

Respectfully submitted,

**THOMPSON WIGDOR LLP**

By: _____

Douglas H. Wigdor
Lawrence M. Pearson

85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
dwigdor@thompsonwigdor.com
lpearson@thompsonwigdor.com

*Counsel for Plaintiff*