UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
AUSTIN FENNER and :
IKIMULISA LIVINGSTON, :
:
Plaintiffs, :
:
vs. : Civ. No.: 09 CV 9832 (LGS)
:
NEWS CORPORATION, NYP HOLDINGS, :
INC., d/b/a THE NEW YORK POST, :
MICHELLE GOTTHELF, and DANIEL :
GREENFIELD, in their official and individual :
capacities, :
:
Defendants. :
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT NEWS CORPORATION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
Garrett D. Kennedy (gkennedy@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700

Attorneys for Defendant
News Corporation

**Table of Contents**

ARGUMENT ................................................................................................................................ 1

I.  Plaintiffs Have Failed to Present Evidence that News Corp. and
    the Post are a Single Employer ......................................................................................... 3

    A.  News Corp. and the Post's Labor Relations are Not Integrated .................................. 3

    B.  News Corp. and the Post Do Not Have Interrelated Operations ................................. 5

    C.  The Companies Do Not Have Common Management ................................................ 6

    D.  Common Ownership and Financial Control ................................................................ 8

II. News Corp. was Not Involved in the Particular
    Circumstances Giving Rise to This Litigation ................................................................. 8

III. News Corp. and NAI are Not "Indistinguishable" ............................................................ 9

CONCLUSION ........................................................................................................................... 11

## Table of Authorities

**Page(s)**

CASES

Balut v. Loral Elec. Sys.,
    988 F. Supp. 339 (S.D.N.Y. 1997),
    aff'd, 166 F.3d 1199 (2d Cir. 1998)..................................................................................4, 7

Da Silva v. Kinsho Int'l Corp.,
    210 F. Supp. 2d 241 (S.D.N.Y.),
    aff'd, 229 F.3d 358 (2d Cir. 2000)...................................................................................1, 8, 9

Darden v. DaimlerChrysler N.A. Holding Corp.,
    191 F. Supp. 2d 382 (S.D.N.Y. 2002)....................................................................................9

Eisenberg v. Advance Relocation & Storage, Inc.,
    237 F.3d 111 (2d Cir. 2000)....................................................................................................9

Frank v. U.S. W., Inc.,
    3 F.3d 1357 (10th Cir. 1993) ..................................................................................................7

Graves v. Deutsche Bank Securities,
    2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011) .........................................................................1

Herman v. Blockbuster Ent. Grp.,
    18 F. Supp. 2d 304 (S.D.N.Y. 1998),
    aff'd, 182 F.3d 899 (2d Cir. 1999)......................................................................................5, 7

Kellett v. Glaxo Ent., Inc.,
    1994 WL 669975 (S.D.N.Y. Nov. 30, 1994).........................................................................5

Murray v. Miner,
    74 F.3d 402 (2d Cir. 1996).................................................................................................1, 6

Velez v. Novartis Pharma. Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2007) .......................................................................................6, 7

Williams v. Interpublic Severance Pay Plan,
    2007 WL 2298386 (N.D. Ill. Aug. 7, 2007) ..........................................................................9

Defendant News Corporation ("News Corp.") respectfully submits this reply memorandum of law in further support of its motion for summary judgment (the "Motion").[1]

## ARGUMENT

Plaintiffs ask the Court to find News Corp. and defendant NYP Holdings, Inc. (the "Post") to be a "single employer" and to hold News Corp. liable for the acts of its indirect subsidiary.[2]  Yet a court may do so "***only under extraordinary circumstances***," Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (emphasis added), because "a parent company should not lightly be held responsible for the acts of its subsidiaries absent proof that the parent was involved in the particular circumstances giving rise to the litigation."  Da Silva v. Kinsho Int'l Corp., 210 F. Supp. 2d 241, 244 (S.D.N.Y.), aff'd, 229 F.3d 358 (2d Cir. 2000).

Plaintiffs have failed to adduce competent evidence which even suggests that News Corp. was involved in any of the adverse actions of which they complain (which relate to their respective employment with the Post), let alone such "extraordinary circumstances" that could support a finding that News Corp. and the Post operate as a single, integrated enterprise.  To the contrary, the evidence demonstrates that News Corp. and the Post are and always have been operated as separate and distinct enterprises that have (i) completely separate labor relations; (ii) distinct operation control; (iii) separate management; and (iv) separate control over their respective finances.

---

[1] As a threshold matter, Plaintiff's Memorandum of Law, the Pearson Declaration and the Rule 56.1 Counterstatement of Material Facts ("CSMF") should be rejected because they were not filed, as required by the Court's order, on May 24, 2013, but in the early hours of May 25, 2013.  See Graves v. Deutsche Bank Securities, 2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011). Submitted herewith is the declaration of Mark W. Lerner, dated May 31, 2013 ("Rep. Dec.").  References to the Lerner Declaration, dated May 10, 2013, in support of the Motion, are referred to as "Lern. Dec."; the Pearson Declaration, dated May 24, 2013, in support of Plaintiff's Memorandum of Law in opposition to the Motion ("Pl. Brf.") is cited as "Pear. Dec."  All references to deposition transcripts are cited as defined in the Motion.

[2] The same analysis applies to "joint employers."  (See Def. Brf. at 10 n.13.)

Needless to say, the slight, sporadic involvement of News Corp. in the business affairs of the Post – involvement that courts routinely pronounce to be normal, customary and expected of a parent corporation – and the fact that there are a few common facilities used by the two entities (e.g., a cafeteria in the building that everyone can use) plainly is insufficient for any reasonable fact finder to conclude they constitute a single employer.

Plaintiffs attempt to obscure the record by repeatedly referencing the "Chairman of News Corp.," *completely omitting from their brief* that the same individual also is Chairman of the Board *of the Post*. Of course, they completely ignore the maxim that board members can and often do wear "two hats" and offer no evidence that he made any decisions at the Post while wearing his News Corp. "hat." Plaintiffs use the same ploy in referencing two other executives, Lachlan Murdoch and Paul Carlucci.

Attempting to further manufacture a fictional relationship, Plaintiffs summarily argue that News Corp. and an indirect subsidiary, News America Inc. ("NAI"), are "indistinguishable." They do so in an effort to connect NAI employees to the Post, and then back to News Corp. Bewildering as their argument is, they provide no basis why this Court should find that NAI and News Corp. are not separate business entities – they just ask this Court to presume this is not true. From that faulty premise, they then refer to NAI employees (such as its Deputy General Counsel, Jordan Lippner, and Les Goodstein), as "News Corp." employees; refer to benefit and pension plans purchased *by NAI and titled as NAI plans* (see Rep. Dec., Exh. 1) as if purchased by News Corp. (Pl. Brf. at 5 ("News Corp. provided the healthcare and benefit plants for Post employees.")); and refer to a company purchased *by NAI*, the Community Newspaper Group ("CNG"), as owned by "News Corp." These conclusory arguments properly should be rejected.

Plaintiffs' strategy is clear: muddy the record with inconsequential, irrelevant and unsupported assertions and fabrications in an effort to create the false appearance of material factual disputes. But no such facts exist and, as such, summary judgment should be granted.

## I. Plaintiffs Have Failed to Present Evidence that News Corp. and the Post are a Single Employer

### A. News Corp. and the Post's Labor Relations are Not Integrated

Plaintiffs vaguely claim News Corp. "controlled the Post's human resources department" (Pl. Brf. at 4), but they do not dispute with any competent evidence that the Post and its HR department are independent of, and not overlapping with, that of News Corp., and (i) have authority over its hiring, firing, salary, and disciplinary decisions; (ii) handle all applications for employment (including that Lachlan Murdoch, *as publisher of the Post*, hired Col Allan, the Post's Editor-in-Chief, and that the Chairman of the Board *of the Post* appointed the Post's Publishers); (iii) have developed and implemented their own performance evaluation system; (iv) set employee salaries;[3] (v) have developed numerous policies applicable to Post employees;[4] and (vi) distribute all of its policies. (CSMF, ¶¶ 3-8, 11.) Despite Livingston having been employed at the Post for *16 years*, and Fenner for *2 ½ years* (and years of discovery), neither of them can even identify *a single employee* in the human resources department of an entity other than the Post (including any from News Corp. and NAI).

Plaintiffs claim two of the Post's many policies (see CSMF, ¶ 8) show integrated labor relations. These are its "Standards of Business Conduct" ("Standards") and "Electronic Communications Policy," each prepared by News Corp., and each of which was adopted and

---

[3] Plaintiffs assert that because certain pay authorization forms have a line to be signed by the Publisher, and that Lachlan Murdoch served as both Publisher of the Post and COO of News Corp., News Corp. controls Post salaries. (CSMF at ¶ 7.) As noted above, News Corp. does no such thing. (Scial. Aff., ¶ 7.) In any event, **both** pay authorization forms cited by Plaintiffs are unsigned by the Publisher. (Pear. Dec., Exh. 3, at NYP-206, -210.)
[4] As noted in § VI, infra, Plaintiffs' conclusory reference in the CSMF to Lippner as a "News Corp. attorney" is without basis in fact and deliberately misleading. (CSMF, ¶ 8.)

3

implemented by the Post.  (CSMF, ¶ 9.)  A subsidiary adopting policies from a parent does not create a "single employer," Balut v. Loral Elec. Sys., 988 F. Supp. 339, 347 (S.D.N.Y. 1997), aff'd, 166 F.3d 1199 (2d Cir. 1998) (a subsidiary's use of "[a] parent's broad general policy statements regarding employment . . . are not enough."), especially where, as here, such do not mandate specific discipline for breaches (they state only that discipline "may" result).  (Pear. Dec., Exh. 7 at NYP-186; Exh. 10.)  Plaintiffs claim that these general "enforcement provisions" demonstrate News Corp. "enforced" policies against Post employees (CSMF, ¶¶ 9-10), but all evidence is to the contrary.  (See Scial. at 188-89 [Lern. Dec., Exh. 2]; Lipp. at 230, 238, 359 [Lern. Dec., Exh. 1]; Scial. Aff., ¶ 10.)

Plaintiffs' other assertions fail to show integrated labor relations.  They claim Alertline, an anonymous complaint service subscribed to by News Corp. for employee and general public use, shows integrated labor relations.  (Pl. Brf. at 4, 15.)  It does not:  complaints to Alertline, which is "managed by a third party" and not News Corp., are provided to and "investigate[d]" by the "people" of the company about which a complaint is made.  (Lipp. at 260 [Pear. Dec., Exh. 4].)  They claim the "Fox Credit Union" offers "special interest rates" to Post employees, but present no evidence regarding the operation of this service and News Corp. is not the same entity as Fox and/or the Fox Credit Union.  (Pl. Brf. at 14.)  They posit without evidence that "News Corp. provided the healthcare and benefit plans for Post employees" (id. at 5), but record evidence indisputably demonstrates that *NAI* – not News Corp. – purchased plans in which the Post (and News Corp.) *may, if it chooses*, participate, with the Post choosing the plans and rates it wishes to provide to its employees. (Lipp. at 388-91 [Lern. Dec., Exh. 1]; Rep. Dec., Exh. 1.) Moreover, a parent (NAI) offering "a common package of benefits" to a subsidiary does not run

afoul of the "single employer" doctrine.[5]  Kellett v. Glaxo Ent., Inc., 1994 WL 669975, at *5 (S.D.N.Y. Nov. 30, 1994).

### B. News Corp. and the Post Do Not Have Interrelated Operations

Plaintiffs admit, by failing to dispute with competent evidence, that the Post controls its day-to-day operations, has its own bank account, maintains its financial books, records, and profit and loss statements, is responsible for its day-to-day expenses, is charged rent for the office space it occupies, prints and distributes its product, has its own marketing department,[6] has its own CFO who is a Post employee, has its own Finance Department comprised of Post employees, has its own computer system and databases, and has its own security department, all without the involvement or control of News Corp.  (CSMF, ¶¶ 15-21, 23-27.)  Stated otherwise, Plaintiffs admit that the Post and News Corp. do not have interrelated operations.

Plaintiffs principally *argue* that the Post and News Corp. share space on the 8th floor of the building at 1211 6th Avenue ("1211 Building").  But the evidence is to the contrary.  News Corp. has offices on the 8th floor; the Post does not.  They rely on the testimony of Allan but, *like Guzman herself*, Allan testified that the Post's Features and Op-Ed departments are on the 9th floor, with no offices on the 8th floor.[7]  Plaintiffs, Guzman and all other deponents testified only to the Post having offices on the 9th and 10th floors.  (See, e.g., Rep. Dec., Exh. 3; Lipp. at 48-50 [Lern. Dec., Exh. 1].)

---

[5] Plaintiffs rely on an affidavit of Sandra Guzman for the assertion that two "News Corp." employees on the Hispanic Council "recruited employees to the Post."  (Affidavit of Sandra Guzman, dated May 23, 2013 ["Guz. Aff."], ¶ 20.)  First, Guzman testified at least one of these individuals was not a News Corp. employee.  (Guz. at 349 [Rep. Dec., Exh. 2].)  Second, this is hearsay – she has no personal knowledge of this.  Third, the Hispanic Council has no authority over the Post's HR (Scial. Aff., ¶ 16), and recruiting would not create a single-employer relationship.  See, e.g., Herman, 18 F. Supp. 2d at 309 (no single employer where, *inter alia*, employees were transferred from parent to subsidiary).

[6] Plaintiffs' attempt to refute this (CSMF, ¶ 25) with the conclusory assertion that Goodstein is a "News Corp.," and not an *NAI*, employee, which, as described below, see § IV infra, is patently false.

[7] Allan once misspoke, saying that the Post Features and Op-Ed were on the 8th Floor.  He immediately corrected himself (Allan at 10-11 [Pear. Dec., Exh. 1) (testimony Plaintiffs speciously omit – they cite "Allan at 10-11", Pl. Brf. at 3).

5

Plaintiffs likewise falsely claim Rupert Murdoch, News Corp.'s Chairman – who also is the Chairman *of the Post* – is involved "regularly" with business and editorial decisions, but present no evidence of this, and it is in any event irrelevant since he is entitled to wear "two hats." (See § III, infra.) The "evidence" they cite does not support this. With respect to business decisions, they cite testimony about his involvement *with another company (the Daily)* (Compare Angelo at 50 [Day 1] [Pear Dec., Exh. 5] [stating he discussed a business decision about "The Daily and/or The New York Post"], with id. at 54-55 [Rep. Dec., Exh. 4] [recalling only discussing a decision regarding The Daily].) Thus, their claim of "day-to-day" involvement in editorial decisions is based on Mr. Murdoch's once apologizing for the Stimulus Cartoon (Allan at 26, 500 [Pear. Dec., Exh. 1]); that he is involved in determining political candidates for the Post to endorse (Pl. Brf. at 17); and that the Post's Publisher has seen him in the Post's newsroom approximately 12 times over his *13-year career.* (See Angelo at 29 [Day 1] [Lern. Dec., Exh. 6]; id. at 37 [Pear. Dec., Exh. 5].) Suffice it to say, this "evidence" is not sufficiently "extraordinary" to support a determination that News Corp. and the Post are a single employer. Murray, 74 F.3d at 404.

    C.   The Companies Do Not Have Common Management

While the existence of common management is a less important factor, Velez v. Novartis Pharma. Corp., 244 F.R.D. 243, 253-54 (S.D.N.Y. 2007), there is no evidence that any member of Post senior management *during the statutory time period* is or ever has been an employee of News Corp., including Paul Carlucci, Publisher from 2005 through 2012; Col Allan, Editor-in-Chief; Jesse Angelo, then-Executive Editor; Jennifer Jehn and Amy Scialdone, the SVP and VP of HR; and Michael Racano, CFO. (CSMF, ¶¶ 17, 28-32.) Likewise, there is no dispute that this senior management constitutes the Post's Executive Committee (id., ¶ 33), along with one other

member, Les Goodstein (id. at ¶34), **who is an employee of NAI and not News Corp.**, and who runs a group of small newspapers called the Community Newspaper Group ("CNG"), **owned by NAI (not News Corp.)**, which tries to cross-sell advertising space with the Post. (Lipp. at 166 [Rep. Dec., Exh. 5].) There likewise is no dispute that no News Corp. employee sits on the Post's Management Council. (Pl. Brf. at ¶ 39.) And it is not disputed that the Post and News Corp. have separate Boards of Directors. (Id. at 40.)

Plaintiffs attempt to show integration because News Corp. and the Post boards have the same Chairman, and because the one-time Publisher of the Post, Lachlan Murdoch, was also a News Corp. officer. This is of no moment. It is commonplace for officers and directors to have multiple roles in a parent/subsidiary relationship. Herman v. Blockbuster Ent. Grp., 18 F. Supp. 2d 304, 312 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999); Velez, 244 F.R.D. at 253-54. Thus, the fact that Rupert Murdoch selected the Post's two publishers in the last decade and has been involved in a limited number of high level editorial and political decisions (see § II, infra), does not evidence create a "single employer" relationship, any more than Lachlan Murdoch's having been Post Publisher as well as Deputy COO of News Corp. See Herman, 18 F. Supp. 2d at 312 (CEO and CFO of parent served same roles with subsidiary); Frank v. U.S. W., Inc., 3 F.3d 1357, 1364 (10th Cir. 1993) (manager employed by parent who managed the marketing operations of three subsidiaries insufficient). Moreover, there is no dispute that Lachlan Murdoch was acting in his capacity as Publisher in hiring Col Allan.

Lastly, the fact that Carlucci, as the Post's Publisher, reported to the COO of News Corp. does not evidence interrelated operations. (Carl. at 28-29 [Pear. Dec., Exh. 2].) As previously noted, an executive of a subsidiary reporting to an executive of a parent company is "no more than what a parent typically requires of a subsidiary." Balut, 988 F. Supp. at 342, n.6. Strangely,

7

they also claim Carlucci "filled a role overseeing all advertising for all News Corp. media and publishing holdings" (Pl. Brf. at 15, 17), but cite nothing to support this proposition, which is false.

        D.  <u>Common Ownership and Financial Control</u>

Plaintiffs assert that the common ownership factor "is uncontested." (Pl. Brf. at 17.) The Post is a wholly-owned subsidiary of News Corp., *three levels down the corporate chain*. It is undisputed, however, that the Post maintains its own financial control including bank accounts, expenses, and profit and loss statements. (Def. Brf., § II.B).

**II.**    <u>**News Corp. was Not Involved in the Particular Circumstances Giving Rise to This Litigation**</u>

News Corp. may not be liable "*absent proof that [it] was involved in the particular circumstances giving rise to the litigation*." <u>Da Silva</u>, 210 F. Supp. 2d at 244 (emphasis added). Plaintiffs have failed to adduce a shred of competent evidence to dispute that the essential elements of their employment – hiring, firing, supervision, performance evaluations, assignments, and compensation – were entirely dictated by the Post. (<u>See</u> § I, <u>supra</u>.)

It is undisputed that Fenner submitted a job application to the Post, interviewed with Post employees, signed an offer letter with the Post, was hired by the Post, was supervised by Post employees, who prepared his performance evaluations, was compensated by the Post, worked as a senior reporter for the Post for its newspaper, and did not provide services to News Corp. (CSMF, ¶¶ 39-44.) And it is undisputed that the decision to terminate his employment was made solely by employees of the Post. (<u>Id.</u>, ¶ 45.)

It is likewise undisputed that Livingston applied for employment with the Post, that she signed an offer of employment with the Post, was always compensated for work performed by the Post, was supervised by employees of the Post, received performance evaluations from Post

8

employees, and that decisions relating to all job assignments were made by Post employees. (Id., ¶¶ 46-50.) Nor does she dispute that the decision to terminate her employment was made by the Post's Publisher. (Id., ¶51.)

### III.  News Corp. and NAI are Not "Indistinguishable"

Plaintiffs' opposition relies on the false and unsupported premise that NAI and News Corp. are "indistinguishable." (Pl. Brf. at 6.) The argument is nonsense and without factual or legal foundation. Plaintiffs offer nothing to support their conclusory argument that News Corp. and NAI are the same company. Indeed, they took no discovery of NAI, and offer no relevant evidence which would (or could) show that NAI and News Corp.'s operations are commingled to such a large degree that they could be deemed a single employer. See Darden v. DaimlerChrysler N.A. Holding Corp., 191 F. Supp. 2d 382, 395 (S.D.N.Y. 2002) ("[A]s a matter of policy, courts presume the separateness of legally distinct corporate entities." ).

That Jordan Lippner, an attorney employed by NAI (Lipp. at 18 [Lern. Dec., Exh. 1]), at times has acted as legal counsel to News Corp. and the Post, and that he reports to an attorney for News Corp. is of no moment. They also argue the fact that Goodstein is an employee of NAI (Lern. Dec., Exh. 15) and manager of CNG (owned by NAI [Lipp. at 166] [Rep. Dec., Exh. 5]), somehow makes NAI and News Corp. "indistinguishable." Critically, they offer no evidence that Goodstein ever provided any services to News Corp., and their assertion that he "authorized" a press release identifying him as a News Corp. employee is completely false. (Good. at 43-44 [Pear. Dec., Exh. 15] [stating, "Those are not my words"].)[8] To the contrary, Goodstein's

---

[8] Plaintiffs claim that Goodstein's title and business card evidence that he was a News Corp. employee. But title is not a factor considered by any court in determining whether an individual is employed by a company, Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113-14 (2d Cir. 2000) (listing factors regarding determining "employer" not including "title") (citations omitted), and the business card is hearsay, Williams v. Interpublic Severance Pay Plan, 2007 WL 2298386 (N.D. Ill. Aug. 7, 2007) (refusing to consider as hearsay an unauthenticated business card as evidence of plaintiff's title).

employment contract (Lern. Dec., Exh. 15) and W-2s indicate that he is employed by NAI. (Rep. Dec., Exh. 6.)  They also claim that Lippner and Goodstein have "News Corp. e-mail addresses" because they end in "newscorp.com," but, as Lippner explained, this is an e-mail address for NAI employees as well as News Corp. [9] (Lipp. at 107-13 [Lern. Dec., Exh. 1].)  The remainder of their argument merely concerns Goodstein's attending the Post's Executive Committee meetings and his role with *Tempo*, which is irrelevant to the purported interrelation of NAI and News Corp.

None of the foregoing, however, is of any relevance.  Even assuming NAI and News Corp. are "indistinguishable", such a determination (albeit incorrect) has no bearing on the issue presented in this case, i.e., **whether News Corp. and the Post are a single employer.**

---

[9] Plaintiffs falsely claim that Carlucci served as Chairman and CEO of NAI.  (Pl. Brf. at 7.)  This is not true; he served as Chairman and CEO of News America Marketing, a fact that is irrelevant to any determination regarding NAI and News Corp.  (Pear. Dec., Exh. 3 at SG_6961).

10

## **CONCLUSION**

Based on the foregoing, Defendant News Corporation respectfully requests that this Court grant summary judgment dismissing with prejudice Plaintiffs' Amended Complaint in its entirety.

Dated: May 31, 2013
       New York, New York

                            Respectfully submitted,

                            KASOWITZ, BENSON, TORRES
                              & FRIEDMAN LLP

                            By:  /s/ Mark W. Lerner
                                Marc E. Kasowitz (mkasowitz@kasowitz.com)
                                Mark W. Lerner (mlerner@kasowitz.com)
                                Blythe E. Lovinger (blovinger@kasowitz.com)
                                Garrett D. Kennedy (gkennedy@kasowitz.com)

                            1633 Broadway
                            New York, New York 10019
                            Tel.: (212) 506-1700
                            Fax: (212) 506-1800

                            Attorneys for Defendant
                            News Corporation